# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 07-753


**KATHY BENNETT**

**VERSUS**

**PILGRIM'S PRIDE**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - District 2
PARISH OF RAPIDES, NO. 04-06499
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*


## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Oswald A. Decuir, and J. David Painter, Judges.

**AFFIRMED.**

**William Daniel Dyess**
**Dyess Law Firm, LLC**
**P.O. Drawer 420**
**Many, LA 71449**
**(318) 256-5667**
**Counsel for Plaintiff/Appellee:**
**Kathy Bennett**

**Dona Kay Renegar**
**Huval, Veazey, Felder**
**P. O. Box 80948**
**Lafayette, LA 70508**
**(337) 234-5350**
**Counsel for Defendant/Appellant:**
**Pilgrim's Pride Corporation**

**SAUNDERS, Judge.**

This is a workers' compensation case. On June 7, 2004, the employee fell from a lift truck causing injury to her lower back. Workers' compensation medical and indemnity benefits were paid from August 13, 2004 through February 17, 2006. On February 17, 2006, the employee's indemnity benefits were discontinued.

After a trial, the Workers' Compensation Judge (WCJ) found that the employee was entitled to reinstatement of her indemnity benefits and that the employee was entitled to $2,000 in penalties and $5,000 in attorney fees. The employer appealed raising two assignments of error.

We affirm the WCJ on both assignments of error. Further, we award the employee $2,500 in additional attorney fees for work done on this appeal.

**FACTS AND PROCEDURAL HISTORY:**

Kathy Bennett (hereinafter "Bennett") was hired by Pilgrim's Pride (hereinafter "the employer") in November 2003 as a truck driver. Bennett was promoted to Embrex Leader and was working in that capacity on June 7, 2004. On that date, while she was in the process of unloading chick boxes, Bennett slipped and fell onto her right-sided buttock.

Bennett was not initially removed from work; therefore, indemnity benefits were not instituted. She first treated with Dr. James Knecht and was reportedly feeling much better on July 23, 2004. After that date, Bennett began experiencing increased pain on the right side of her lower back, her right hip, her right buttock and her right thigh.

Because of the increased pain she was experiencing, Bennett began treating with Dr. John P. Sandifer on August 10, 2004. Dr. Sandifer initially recommended very light duty work for several weeks. However, within two weeks, he decreased her

work status to sedentary or light work. By September 27, 2004, Dr. Sandifer concluded that Bennett could not return to work and that Bennett needed an MRI. An MRI taken August 24, 2004, indicated a small, central herniated nucleus polposus at L4-5 causing very mild effacement of the thecal sac with no paracentral later components.

On February 1, 2005, the employer sent Bennett to its own orthopedic surgeon, Dr. Steven Kautz. Dr. Kautz opined that Bennett could return to work as he could find no objective evidence to support Bennett's complaints of pain.

Bennett then reported to Dr. Sandifer that she was experiencing urinary incontinence and bowel control problems. Dr. Sandifer sought another MRI and referred Bennett to a neurosurgeon, Dr. Donald Smith. Dr. Smith examined Bennett on June 13, 2005. Dr. Smith concluded that Bennett had a very mild lumbar degenerative disc disease with no objective evidence of abnormality on physical examination. Dr. Smith opined that Bennett did not need another MRI and that she could return to work without restrictions. Dr. Kautz agreed with Dr. Smith's findings.

On January 4, 2006, Bennett was examined by Dr. Karl K. Bilderback, an orthopedic surgeon asked by the workers compensation court to perform an independent medical examination. Dr. Bilderback found that Bennett did not display any objective evidence of an injury consistent with her symptoms, that Bennett displayed characteristics of symptom magnification, and that Bennett could return to work at full capacity. Based on Dr. Bilderback's opinion and the opinions of Dr. Kautz and Dr. Smith, the employer terminated Bennett's indemnity benefits on February 17, 2006.

Dr. Sandifer continued to treat Bennett. Subsequent to the employer

2

terminating Bennett's indemnity benefits, Dr. Sandifer opined that Bennett could not return to work and that she needed another MRI. On July 17, 2006, Bennett underwent another MRI of the lumbar spine which revealed dessicated discs at L4-5, L5-S1, and a tear in the annulus fibrosis of L4-5 with bulging of the annulus fibrosis involving the right lateral recess at that level. Dr. Sandifer opined that the MRI showed some possible nerve-root involvement on the right side and that the annular tear was probably caused by the accident.

The employer did not investigate further into the compensability of Bennett's claim. A trial was held on October 31, 2006. On March 16, 2007, the WCJ entered an oral ruling in favor of Bennett that was memorialized in a Judgment dated March 29, 2007. The WCJ found that Bennett was entitled to reinstatement of temporary, total disability benefits at the rate of $429.00 per week effective February 17, 2006 through August 16, 2006, with supplemental earnings benefits with zero earning capacity to be paid at a weekly basis of $429.00. The WCJ further awarded penalties of $2,000 in favor of Bennett for failure to reinstate benefits following the depositions of Drs. Sandifer, Bilderback and Kautz in October 2006, but declined to assess penalties or attorney fees for the termination of weekly benefits on February 17, 2006. Finally, the WCJ awarded Bennett $5,000.00 in attorney fees.

The employer appealed alleging: (1)that the WCJ erred in finding that Bennett met her burden of proving temporary and total disability by clear and convincing evidence based upon the medical evidence, and (2) that the WCJ erred in awarding a penalty and attorney fees for the employer's alleged failure to reasonably controvert Bennett's entitlement to reinstatement of temporary and total disability benefits. We find that the two assignments raised by the employer lack merit as the WCJ's

judgment was not manifestly erroneous. All costs of this appeal are to be paid by the employer. We award $2,500.00 in additional attorney fees to Bennett for work performed on this appeal.

**ASSIGNMENTS OF ERROR:**

1. Did the WCJ err in finding that Bennett met her burden of proving temporary and total disability by clear and convincing evidence based upon the testimony of physicians that disc dessication could be the cause of her buttock pain but not her leg pain, and when three physicians testified that the claimant had no evidence of nerve compression resulting from the work accident and could return to work without restrictions?

2. Did the WCJ err in awarding a penalty and attorney fees for the employer's alleged failure to reasonably controvert entitlement to temporary and total disability benefits by relying on the testimony of claimant's neurosurgeon, employer's orthopedist and the State's independent orthopedist that the claimant had no evidence of nerve root compression to cause her leg pain and could return to work without restrictions?

**ASSIGNMENT OF ERROR #1:**

The employer argues that the WCJ erred in finding that Bennett met her burden of proving temporary and total disability by clear and convincing evidence based upon the medical evidence. We disagree.

The Louisiana Supreme Court stated the following in *Freeman v. Poulan/Weed Eater*, 93-1530, pp. 4-5 (La.1/14/94) 630 So.2d 733, 737-738:

> In a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong." The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. (Citations omitted.)

Louisiana Revised Statute 23:1221(1)(c) states, in pertinent part, that,

4

"compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any assumption of disability, that the employee is physically unable to engage in any employment. . ."

This court, in *Wiltz v. Baudin's Sausage Kitchen*, 99-930 p.17-18 (La.App. 3 Cir. 6/19/00), 763 So.2d 111, 123, *writ denied*, 00-2172 (La.10/13/00), 771 So.2d 650, stated the following:

> We have said "that positive findings should be afforded greater weight than negative findings as to the existence or nonexistence of a particular medical condition." *Danzey v. Evergreen Presbyterian Ministries*, 95-167, p. 10 (La.App. 3 Cir. 6/7/95); 657 So.2d 491, 497. *See also, Campbell v. Luke Constr. Co.*, 465 So.2d 688 (La.1985). In *Johnson v. Temple-Inland*, 95-948 (La.App. 3 Cir. 1/31/96); 670 So.2d 388, *writ denied*, 96-544 (La. 4/19/96); 671 So.2d 919, we held although the court-appointed expert's opinion must be considered prima facie true, the opinion of the court-appointed expert is not conclusive. We also said in *Menard v. Winn Dixie Louisiana, Inc.*, 93-1497, p.13 (La.App. 3 Cir. 6/1/94); 640 So.2d 775, 783:
>
> > . . . [W]hile the law permits the hearing officer to appoint a physician to perform an independent medical examination, it does not require the hearing officer to accept his conclusions. *A hearing officer simply does not cede the responsibility afforded [his] office when [he] chooses to appoint an independent medical examiner.* (Citations omitted)(Emphasis added).
>
> Further, it had been a long held tenet "that the testimony of a claimant's treating physician should ordinarily be afforded more weight than that of an examining physician." *Watkins v. Asphalt Associates, Inc.*, 96-249, p.9 (La.App. 3 Cir. 12/4/96); 685 So.2d 393, 398, *Johnson*, *supra*, 670 So.2d 388. The reason for this preference is "that the treating physician is more likely to know the patient's symptoms and complaints due to repeated examinations and sustained observations." *Wells. v. Allstate Ins. Co.*, 510 So.2d 763, 767-768 (La.App. 1 Cir.), *writ denied*, 514 So.2d 463 (La.1987).

Therefore, given the standard of review and the burden on Bennett, this court must determine, after a thorough review of the record, whether it was reasonable for the WCJ to find that Bennett proved by clear and convincing evidence that she was

temporarily, physically incapable of engaging in any employment. We find that there is ample evidence in the record to hold that the WCJ's judgment was reasonable.

Dr. John P. Sandifer was Bennett's treating orthopedic surgeon for over two years. He has been of the opinion that Bennett could not return to her previous employment since November 15, 2004, up through the date of the trial. Dr. Sandifer based his opinion upon both subjective and objective evidence.

Dr. Sandifer testified that Bennett displayed subjective symptoms of initial pain in her lower back and hip that gradually worsened so that the pain, at the time of trial, now radiates to the right buttock and down through the right knee, sometimes going to her lower right leg.

The employer contends that Bennett's subjective complaints were questionable as Bennett's condition began to worsen only after she received a letter threatening her termination should she continue to be tardy and continue to perform poorly at her job. The employer points to the medical records of Dr. James D. Knecht, a general practitioner, that indicate Bennett was making progress prior to her condition worsening. This contention is rebutted by the testimony of Dr. Sandifer that Bennett has been a very compliant patient and that he had no reason to suspect any sort of symptom magnification or malingering. Further, Randy Brewer, Bennett's boyfriend, testified that Bennett no longer participated in several activities that she used to enjoy such as softball, fishing, riding four wheelers or taking walks. The consistent complaints of pain from Bennett corroborated by the testimony of her boyfriend, Randy Brewer, and the testimony of Dr. Sandifer, make reasonable a finding of fact by the WCJ that Bennett's condition was legitimate.

Dr. Sandifer also used objective evidence to formulate his opinion. Dr. Sandifer

6

based his opinion that Bennett could not return to work on Bennett's worsening performance in a straight leg test. Dr. Sandifer testified that Bennett had a positive straight leg test at 75 degrees on August 10, 2004, but showed a much worse performance with a positive straight leg test at 45 degrees on October 5, 2005. Dr. Sandifer testified that Bennett's October 5, 2005, performance correlated with Bennett's increased complaints of intensity in pain and symptoms from her visit and initial straight leg test on August 10, 2004.

Other objective evidence Dr. Sandifer used to bolster his opinion of Bennett's work status was that of Magnetic Resonance Imaging (MRI) testing. Bennett had an MRI first on August 24, 2004. That MRI showed a small, central herniated nucleus pulposus at L4-5, causing very mild effacement of the thecal sac. Dr. Sandifer testified that this MRI was consistent with Bennett's symptoms at that time. The second MRI, performed nearly two years later on July 17, 2006, had different results. The second MRI showed some degenerative changes at L4-5 and L-5, S-1, with dessicated discs and a tear of the annulus fibrosis at L4-5, mainly on the right lateral recess. Again, Dr. Sandifer testified that the results of this MRI, potential irritation of the nerve that goes to Bennett's right lower extremities, correlated with the symptoms that she experienced, i.e. radiating pain in her right buttock, right thigh, right knee and sometimes down below her right knee. Finally, Dr. Sandifer testified that it was more probable than not that Bennett's initial fall caused the tear in her annulus fibrosis at L4-5.

The employer argues that the testimony of Drs. Kautz, Bilderback and Smith negated Dr. Sandifer's opinion on Bennett's work status. Dr. Steven Kautz, an orthopedic surgeon, saw Bennett only once, on February, 1, 2005. Dr. Kautz, based

7

upon his physical examination and the August 24, 2004, MRI, opined that Bennett had no nerve root compression, that she had no permanent injury, and that he had no reason to place any restriction upon her from returning to work.

While his opinion is contrary to that of Dr. Sandifer, during his deposition on October 12, 2006, Dr. Kautz was first shown the results of Bennett's second MRI. After Dr. Kautz reviewed the results of the second MRI, the following exchange took place between counsel for Bennett and Dr. Kautz:

Q:   You disagree with Dr. Sandifer?
A:   What did Dr. Sandifer say?

Q:   Dr. Sandifer recommended that she not return to work and her problem was worsening and that she may be in the future a candidate for surgery.
A:   I don't have any records of that, so I don't know that I can answer for his opinion one way or another. I haven't seen her since February of 2005 and based on the information I have, she had no radicular symptoms, she had no neurological symptoms, she had no focal findings and she had a fairly normal MRI.

Q:   At that time?
A:   At that time.

Q:   But you did tell us that you have never seen this report except for today?
A:   This is the first time I've seen this today.

This exchange indicates that Dr. Sandifer's opinion was based upon more information than Dr. Kautz's opinion expressed in his deposition. However, on October 30, 2006, Dr. Kautz did answer a series of questions sent to him via a letter from the employer. In that letter Dr. Kautz stated that he had looked at all of Dr. Sandifer's records and the July 17, 2006, MRI and stated that his opinion of Bennett's work status did not change although Dr. Kautz had not seen Bennett since February 1, 2005.

Dr. Donald R. Smith, a neurosurgeon, saw Bennett one time on June 13, 2005,

8

when he performed a physical examination. Dr. Smith's recommendations from that exam and his review of Bennett's first MRI were that Bennett was at maximum medical improvement, that she could return to work, and that she did not need further invasive procedures, studies, or active treatment *at this time*.

Dr. Smith never reviewed the findings of Bennett's second MRI. He simply formed his opinion on his one examination with Bennett and the results of her first MRI. Dr. Smith's opinion is limited to the actual date that he saw Bennett, June 13, 2005. At any point in time following June 13, 2005, Dr. Smith's opinion is secondary to that of Dr. Sandifer as Dr. Sandifer continued to see Bennett and had both the subjective evidence of the patient's complaints and the objective results of her second MRI.

Dr. Karl K. Bilderback, an orthopedic surgeon asked by the WCJ to perform an independent medical examination, examined Bennett one time for about 20-30 minutes on January 24, 2006. Dr. Bilderback testified that Bennett had no radicular symptoms, that she displayed characteristics of symptom magnification, and that he would not place any restrictions on Bennett from returning to work at full capacity.

While the three examining physicians' opinions differ from Dr. Sandifer's, Dr. Kautz, Dr. Bilderback and Dr. Smith each saw Bennett only one time. Dr. Sandifer saw Bennett at least twenty times over two years. Dr. Sandifer testified to both subjective and objective evidence in formulating his opinion. Given that Dr. Sandifer's opinion as a treating physician is ordinarily given greater weight than that of examining physicians, we cannot conclude that it was unreasonable for the WCJ to find that Bennett carried her burden of proof that she was temporarily and totally disabled. As such, we affirm the WCJ's judgment in this assignment.

**ASSIGNMENT OF ERROR #2:**

9

The employer argues that the WCJ erred in awarding a penalty and attorney fees for the employer's alleged failure to reasonably controvert Bennett's entitlement to reinstatement of temporary and total disability benefits. This argument lacks merit.

The applicable standard of review in determining whether a defendant should be cast with penalties and attorney fees is the manifest error-clearly wrong standard. *Latigue v. Christus St. Patrick Hosp.*, 03-871 (La.App. 3 Cir. 12/17/03), 861 So.2d 898, *writ denied*, 04-193 (La. 3/26/04), 871 So.2d 349.

Louisiana Revised Statute 23:1201(I), in pertinent part, states:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

This court, in *Johnson v. Transamerica Waste Co.*, 99-190, pp.9-10 (La.App. 3 Cir. 6/2/99), 741 So.2d 764, 770, stated the following:

> In order to avoid the imposition of penalties, an employer must reasonably controvert the workers' compensation claimant's right to benefits. The test to determine if the employer has fulfilled its duty is whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.(Citations omitted.)

An employer who handles a workers' compensation claim cannot continually rely on earlier reports favorable to its position even in the face of newer reports showing a claimant's disability. Such reliance will result in the imposition of penalties and attorney fees. *Scott v. Town of Jonesville*, 96-41 (La.App. 3 Cir. 7/3/96), 676 So.2d 1196.

In the case before us, the employer discontinued Bennett's benefits on February 17, 2006. While there was evidence at that point in time to reasonably controvert Bennett's entitlement to benefits, the employer subsequently received new reports

from Dr. Sandifer that indicated Bennett was disabled from work, and that she needed further diagnostic testing in the form of another MRI.

The record indicates that the employer did not dutifully perform any action from February 2006 to October 2006 to ascertain whether Bennett's claim was compensable, with the exception of approving the July 17, 2006, MRI. In that time frame there were new reports from Dr. Sandifer reiterating his opinion on Bennett's status and there were the results from the July 17, 2006, MRI indicating that Bennett had an annular tear at L4-5. Rather, it seems that the employer blindly relied on the earlier reports from Drs. Kautz, Bilderback and Smith to maintain its position and sought justification for its continued failure in reinstating Bennett's benefits via questions in the October 2006 depositions of Drs. Kautz and Bilderback.

In light of the record, we cannot find that the WCJ's judgment awarding Bennett $2,000.00 in penalties and $5,000.00 in attorney fees was unreasonable. Accordingly, we affirm the WCJ's judgment in this assignment.

Moreover, counsel for Bennett has requested additional attorney fees for work performed on appeal. An award for additional attorney fees is generally given when attorney fees were correctly granted on the trial level, for as to deny such a request on appeal would be inconsistent with the underlying judgment. *Frank v. Kent Guidry Farms*, 01-727 (La.App. 3 Cir. 5/8/02), 816 So.2d 969, *writ denied*, 02-1608 (La. 6/27/03), 847 So.2d 1273. Given that counsel for Bennett has successfully defended the judgment of the WCJ, we grant $2,500.00 in additional attorney fees for work done on this appeal.

**CONCLUSION:**

The employer raised two assignments of error. We found that both assignments of error are without merit. All costs of this appeal are to be

paid by the employer. We award $2,500.00 in additional attorney fees to Bennett for work performed in this appeal.

**AFFIRMED.**

12