STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-370

BRENDA MILLER

VERSUS

CHRISTUS ST. PATRICK HOSPITAL

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, DOCKET NO. 11-02488
CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED AND RENDERED.

Matthew J. Ungarino
Ungarino & Eckert L.L.C.
3850 North Causeway Boulevard
Suite 1280
Metairie, Louisiana 70002
(504) 836-7565
COUNSEL FOR DEFENDANT/APPELLANT:
    Christus St. Patrick Hospital

J. Michael Nash
Ungarino & Eckert L.L.C.
910 Pierremont Road, Suite 351
Shreveport, Louisiana 71106
(318) 866-9599
COUNSEL FOR DEFENDANT/APPELLANT:
    Christus St. Patrick Hospital

**Thomas E. Townsley**
**711 Pujo Street**
**Lake Charles, Louisiana  70601**
**(337) 430-0994**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Brenda Miller**

**Thomas E. Townsley**
**711 Pujo Street**
**Lake Charles, Louisiana  70601**
**(337) 430-0994**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Brenda Miller**

**GENOVESE, Judge.**

In this workers' compensation case, employer, Christus St. Patrick Hospital (CSPH), appeals the judgment rendered in favor of its former employee, Brenda Miller, awarding her indemnity benefits, a penalty, and attorney fees. Ms. Miller has answered the appeal, seeking a reversal of the workers' compensation judge's denial of her request to treat with a physical therapist of her choice and seeking attorney fees for work done on appeal. For the following reasons, we affirm and award attorney fees on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Brenda Miller was employed by CSPH as a certified nurse assistant from September 14, 2007, until her termination on October 14, 2010. Ms. Miller suffered a work-related injury to her back on June 29, 2010. CSPH has never disputed the fact that Ms. Miller was injured while in the course and scope of her employment. CSPH provided medical treatment for Ms. Miller's injury; however, no indemnity benefits were ever paid.

On March 29, 2011, Ms. Miller filed a disputed claim for workers' compensation benefits. Trial was held on September 15 and 21, 2011. On December 5, 2011, the workers' compensation judge (WCJ) rendered judgment in favor of Ms. Miller awarding her indemnity benefits. In her oral reasons for judgment, the WCJ stated:

> The parties to this litigation stipulated that [Ms. Miller] was employed by [CSPH] when she was injured during the course and scope of her employment on June 29, 2010. Ms. Miller was assisting in transferring a patient from a bedside commode to the bed when she injured herself. Ms. Miller was a full-time employee who earned $8.75 per hour, 40 hours per week. Her average weekly wage was $350[.00] per week with a corresponding compensation rate of $233.33.
>
> The facts are that in 2008, [Ms. Miller] suffered a work-related accident. A second accident occurred on June 29, 2010, which is the

accident at issue in this litigation. After the June 29, 2010 accident, [Ms. Miller] was seen at Business Health Partners on July 1st of 2010. Business Health Partners examined [Ms. Miller] and put her on a light duty status at work. In addition, Business Health Partners prescribed pain medication and ordered physical therapy as well as an M.R.I.

On September 7, 2010, [Ms. Miller] was seen by Dr. James Perry, an orthopedic specialist. She had complaints of mid and low back pain and lower left extremity pain. Dr. Perry recommended injections. On October 12th, 2010, Dr. Perry opined that [Ms. Miller] could perform light duty work. [Ms. Miller] was last seen by Dr. Perry on October 21, 2010, at which time he recommended core strengthening and planned to see her in four weeks. [Ms. Miller] had not reached maximum medical improvement and was not able to return to full duty work at that time, nor was she at pre-injury status. She was continued on light duty work status.

On October 14, 2010, [Ms. Miller] was terminated by [CSPH]. Lilabeth Salutillo was [Ms. Miller]'s immediate supervisor at the time of the termination.

After [Ms. Miller]'s termination, she sought treatment by her choice of physician, Dr. Kevin Lechtenberg. Although Dr. Lechtenberg took [Ms. Miller] off work for a short period of time, he ultimately opined that she could work in a light duty status.

The court is asked to decide whether [Ms. Miller] is entitled to workers' compensation indemnity benefits and whether [she] is entitled to her choice of physical therapy facility. All medical treatment prescribed for [Ms. Miller] was and continues to be provided by [CSPH].

The case of [*Palmer v. Schooner Petroleum Services*, 02-397 (La.App. 3 Cir. 12/27/02), 834 So.2d 642, *writ denied*, 03-367 (La. 4/21/03), 841 So.2d 802], provides us guidance in this case. In [*Palmer v. Schooner*], the [c]ourt held that termination does not destroy one's entitlement to SEBs. In that case, the claimant suffered an on-the-job injury to his back. He remained with his employer with a light duty position until he was terminated allegedly for substandard job performance. The [third] [c]ircuit noted, "it is a claimant's refusal to accept employment that fits within his abilities and/or disabilities which is made available to him that precludes an award of SEBs." In other words, "the SEB statute does not permit a claimant to choose not to work and still collect supplemental earnings benefits when he is physically able to work and jobs are available." The [c]ourt further noted that, "to hold that an employee's termination destroys an employee injured on the job's entitlement to SEB would provide incentive for employers to allow injured employees to return to work and thereafter terminate them to avoid paying SEB."

2

Lawful termination, like fraud, cuts through everything; but the reasons for firing here are murky. And whether it's a legal termination or not isn't a question for this forum as workers' compensation courts are not in the business of determining whether a firing was appropriate. What is important here is that termination from employment in and of itself does not end entitlement to supplemental earnings benefits as set forth in the [*Palmer v. Schooner*] case. In the case at hand, [Ms. Miller] returned to work in a light duty status. She worked for a short period of time until her termination on October 14, 2010. She was terminated for violating a hospital policy by posting a comment on Facebook. Pursuant to Ms. Salutillo's comments in the [CSPH] employee memorandum, [Ms. Miller's] employment was terminated based on failure to uphold standards of behavior. After her termination, [Ms. Miller's] treating physician took her off work for a short period of time, but ultimately opined she could work light duty.

The [c]ourt finds that while [Ms. Miller] was a less than stellar employee, the conditions of her termination were obscure or murky. The [c]ourt finds that [Ms. Miller] did not refuse to work, but performed her duties until she was terminated. It is a claimant's refusal to accept employment that fits within his abilities and/or disabilities which is made available to him that precludes an award of SEBs. The [c]ourt does not find that [Ms. Miller] chose not to work, but instead did not work due to the termination of her job. Further, the [c]ourt finds that it was counter intuitive to place a worker, such as [Ms. Miller], with limited abilities on the rehabilitation floor of the hospital. [Ms. Miller] is entitled to workers' compensation indemnity benefits.

On the issue of physical therapy, the [c]ourt finds that it seems somewhat conflicting to have [Ms. Miller] attend physical therapy at [CSPH]'s physical therapy facility; however, [Ms. Miller]'s treating physician, Dr. Lechtenberg, found it suitable; therefore, [Ms. Miller]'s claim for her choice of physical therapy facility is denied.

In accordance with the jurisprudence set forth above, the [c]ourt finds that [Ms. Miller] is entitled to an award of TTD and/or SEB at zero earnings from October 14, 2010. [Ms. Miller]'s claim for her choice of physical therapy facility is denied. [Ms. Miller] is entitled to a penalty for [CSPH's] failure to pay indemnity benefits in the amount of $2,000[.00]. Attorney[] fees are owed in [the] amount of $10,000[.00] for the prosecution of the [claim].

A written judgment was rendered in accordance with these findings and was

signed on December 21, 2012. CSPH has filed a suspensive appeal.

## ASSIGNMENTS OF ERROR

On appeal, CSPH alleges: (1) that the WCJ "committed legal error in refusing to determine whether [Ms. Miller's] termination from [CSPH] was with cause, and therefore failed to find that employment was no longer available to [Ms. Miller] solely due to her own actions, and thus not entitled to indemnity benefits[;]" and (2) that the WCJ "erred in awarding [Ms. Miller a penalty] and attorney fees when [she] was capable of earning [ninety percent] or more of her pre-accident wages and was the sole cause of her loss of employment."

Ms. Miller has answered the appeal, asserting that the WCJ "erred in ruling that [she] was required to treat with the physical therapist requested by [CSPH], who also owns the physical therapy facility, which would appear to be a conflict of interest." Ms. Miller has also requested "additional penalties and attorney fees for [CSPH]'s conduct and for the defense of this appeal."

## LAW AND DISCUSSION

CSPH seeks a de novo review by this court on the basis that the WCJ committed legal error in refusing to address the issue of whether Ms. Miller's termination was for cause. CSPH asserts that "[t]he issue before this court is whether [Ms. Miller] is entitled to [SEBs] when her loss of employment was due to her own actions." In support of its argument, CSPH relies heavily upon the cases of *Palmer v. Alliance Compressors*, 05-478 (La.App. 3 Cir. 11/2/05), 917 So.2d 510, *writ denied*, 05-2440 (La. 3/24/06), 925 So.2d 1231, and *Grillette v. Alliance Compressors*, 05-982 (La.App. 3 Cir. 2/1/06), 923 So.2d 774.

In *Palmer v. Alliance*, 917 So.2d at 513-14, this court noted that:

The parties stipulated that Alliance provided a job to Palmer after her injury that accommodated the restrictions placed upon her . . . . The parties further stipulated that the light duty job would still be available to her but for her termination for cause unrelated to the injury. The fact that the job is no longer available to her solely due to her own

4

actions is no different from refusing to accept the job in the first place and, thus, terminates her entitlement to SEB.

In *Grillette v. Alliance*, 923 So.2d at 778, reiterating its holding in *Palmer v. Alliance*, 917 So.2d 510, this court held that: "an employer cannot avoid paying benefits by creating a job that accommodates any work restrictions and then firing the injured employee without cause and that an injured employee cannot refuse to accept suitable employment or blatantly violate company policy without the possibility of recourse by the employer."

CSPH argues that it was error for the WCJ to support its decision to award Ms. Miller workers' compensation benefits considering this court's holding in *Palmer v. Schooner Petroleum Services*, 834 So.2d 642. In *Palmer v. Schooner Petroleum*, 834 So.2d 642, this court held that termination in and of itself does not end entitlement to SEB. "To hold that an employee's termination destroys an employee injured on the job's entitlement to SEB would provide incentive for employers to allow injured employees to return to work and thereafter terminate them to avoid paying SEB." *Id*. at 650.

CSPH contends that this court's more recent holdings in *Palmer v. Alliance*, 917 So.2d 510, and *Grillette v. Alliance*, 923 So.2d 774, are more applicable to the instant matter and further support its position that Ms. Miller's entitlement to workers' compensation benefits ended when she was terminated for cause. We disagree and find no merit to CSPH's first assignment of error.

A thorough comparison of the two cases relied upon by CSPH, *Palmer v. Alliance*, 917 So.2d 510, and *Grillette v. Alliance*, 923 So.2d 774, against the case relied upon by the WCJ to support its judgment in favor of Ms. Miller, *Palmer v. Schooner*, 834 So.2d 642, reveals a significant distinction which CSPH fails to recognize. In *Palmer v. Alliance*, 917 So.2d 510, and *Grillette v. Alliance*, 923

So.2d 774, the claimants either stipulated or acquiesced that their terminations were for cause. However, in *Palmer v. Schooner*, 834 So.2d 642, the claimant disputed the employer's contention that poor work performance led to his termination.

In the instant matter, Ms. Miller was terminated for what CSPH alleges was a violation of their standards of behavior. According to CSPH, Ms. Miller was terminated on October 14, 2010, because she made threatening statements about her supervisor on a social media website while she was at work on September 8, 2010. Though Ms. Miller does not deny that she posted on a social media website while at work on September 8, 2010, she denies that her posting was directed at her supervisor. Ms. Miller denies violating the standards of behavior required by CSPH. Thus, Ms. Miller clearly disputes the reason for her termination and clearly does not stipulate or acquiesce that her termination was for cause. Therefore, though the holdings in *Palmer v. Alliance*, 917 So.2d 510, and *Grillette v. Alliance*, 923 So.2d 774, may provide some guidance in this matter, we do not find them controlling since this is not a clear case of Ms. Miller being terminated for cause. We find *Palmer v. Schooner*, 834 So.2d 642, to be most analogous to the instant matter, and we find no error in the WCJ's reliance thereon.

As to CSPH's contention that the WCJ erred in failing to consider whether Ms. Miller was terminated for cause, we also find CSPH to be misguided in its understanding of what was legally before the WCJ. Louisiana Constitution Article 5, § 16(A)(1) vests district courts "original jurisdiction of all civil . . . matters." "[T]he workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter." La.R.S. 23:1310.3(F). The question of whether Ms. Miller's termination was for cause is a legal determination to be decided by a district court, not the

administrative agency determining workers' compensation matters. *See* La.Const. art. 5, § 16(A)(1). Therefore, the WCJ in this matter was correct that "whether it's a legal termination or not isn't a question for this forum." Hence, we do not find that the WCJ committed legal error. Consequently, we do not review this matter de novo based on legal error.

The appropriate standard of review in a workers' compensation case, as set forth in *Lynch v. A Door Works, Inc.*, 11-414, p. 3 (La.App. 3 Cir. 10/5/11), 72 So.3d 1033, 1035, *writ denied*, 11-2457 (La. 1/13/12), 77 So.3d 965, is as follows:

> The standard of review applied in workers' compensation cases to a WCJ's finding of fact is the "manifest error–clearly wrong" standard. *Dean v. Southmark Constr.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117. The court of appeal may not set aside the findings of the WCJ "unless they are found to be clearly wrong in light of the record reviewed in its entirety." *Id.* (quoting *Alexander v. Pellerin Marble & Granite*, 93-1698, pp. 5-6 (La. 1/14/94), 630 So.2d 706, 710). "[E]ven where the appellate court is convinced it would have weighed the evidence differently if it had been sitting as trier, the court of appeal may not reverse if the factfinder's findings are reasonable in light of the record reviewed in its entirety." *Winford v. Conerly Corp.*, 04-1278, pp. 15-16 (La. 3/11/05), 897 So.2d 560, 569-70.

The sole question before the WCJ was whether Ms. Miller met the requisite burden of proof for entitlement to workers' compensation benefits. The parties stipulated that Ms. Miller was involved in an accident while in the course and scope of her employment on June 29, 2010. The parties also stipulated that when Ms. Miller was injured, she was working full time, earning $8.75 per hour, and that her average weekly wage was $350.00.

The factual conclusions reached by the WCJ are reasonable and are supported by the evidence. After thoroughly reviewing the evidence in the record and considering the WCJ's detailed reasons for judgment, we find that the WCJ was not manifestly erroneous or clearly wrong in her determination that Ms. Miller met the requisite burden of proof for entitlement to workers' compensation benefits

7

and that CSPH failed to prove that employment was no longer available to Ms. Miller due to her refusal to work.

In its second assignment of error, CSPH alleges that the WCJ erred in awarding Ms. Miller a $2,000.00 penalty and $10,000.00 in attorney fees based on her determination that Ms. Miller was unable to earn ninety percent or more of her pre-accident wages. We disagree.

> "The applicable standard of review in determining whether a defendant should be cast with penalties and attorney fees is the manifest error—clearly wrong standard." *Rutledge v. Resource Transp.*, 08-1149, p. 2 (La.App. 3 Cir. 3/4/09), 7 So.3d 794, 795 (quoting *Bennett v. Pilgrim's Pride*, 07-753, p. 10 (La.App. 3 Cir. 12/12/07), 972 So.2d 423, 429, *writ denied*, 08-103 (La.3/7/08), 977 So.2d 907). It is well settled in Louisiana law that while workers' compensation benefits should be given broad interpretation, the punitive statutes should be interpreted strictly. *Williams v. Rush Masonry, Inc.*, 98-2271 (La.6/29/99), 737 So.2d 41.
>
> Louisiana Revised Statutes 23:1201 governs the payment of benefits and any attorney fees or penalties associated therewith. Subsection E states that "[m]edical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof." Subsection F of that statute mandates that a penalty be assessed when payment is not provided in accordance with the other subparts and allows for attorney fees to be assessed as well. An employer can escape the mandatory penalties only when it reasonably controverts the employee's claim. La.R.S. 23:1201(F)(2). This court has previously held that "[a] claim is reasonably controverted when the employer or insurer produces factual or medical information that reasonably counters the claimant's evidence." *Bourgeois v. Brown's Deli & Market, Inc.*, 09-290, p. 7 (La.App. 3 Cir. 10/14/09), 21 So.3d 1072, 1077 (citing *Davis v. Jones Baldwin Music Co.*, 27,545 (La.App. 2 Cir. 11/1/95), 662 So.2d 803).

*Stockman v. Med. Tech. Inc.*, 11-285, pp. 3-4 (La.App. 3 Cir. 12/14/11), 81 So.3d 198, 201, *writ denied*, 12-145 (La. 3/23/12), 85 So.3d 94.

At trial, Ms. Miller testified that her treating physician, Dr. Lechtenberg, took her off work completely at her November 3, 2010 office visit. No indemnity benefits were ever paid to Ms. Miller because of CSPH's position that Ms. Miller's termination was for cause. Considering the evidence in the record of these

proceedings, we find that Ms. Miller proved she was unable to earn ninety percent of her pre-accident wages and that CSPH failed to reasonably controvert her claim. Therefore, we find no manifest error in the WCJ's award of a penalty and attorney fees.

*Answer to Appeal*

The WCJ denied Ms. Miller's request to choose her own physical therapist. In her answer to appeal, Ms. Miller argues that this was error and she seeks penalties and attorney fees.

Ms. Miller chose her treating physician, Dr. Lechtenberg, as allowed by La.R.S. 23:1121(B)(1).[1] CSPH approved Ms. Miller to receive physical therapy with Total Physical Therapy. Ms. Miller wishes to receive physical therapy from a different clinic on the basis that CSPH owns Total Physical Therapy. She asserts a conflict exists with Total Physical Therapy because it is owned by CSPH, her former employer.

CSPH counters arguing that that while Ms. Miller "has a right to her choice of physician, [she] has no right to choice when it comes to her physical therapist." CSPH points out that this court addressed a similar issue in *Gautreaux v. K.A.S. Construction, LLC*, 05-1192 (La.App. 3 Cir. 2/22/06), 923 So.2d 850, and argues that *Gautreaux* controls the instant matter.

In *Gautreaux*, the plaintiff argued that he had the right to choose a physical therapist to conduct a functional capacity evaluation (FCE). This court stated:

---

[1]Louisiana Revised Statutes 23:1121(B)(1) provides:

> The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice[,] the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.

9

We now are called upon to face the issue squarely as it relates to FCEs. After careful review, we find that the statute itself addresses the issue. Specifically, it provides that an injured employee "shall submit himself to an examination by a duly qualified **medical practitioner**" selected by his employer. La.R.S. 23:1121(A) (emphasis added). However, the statute also provides that an injured "employee shall have the right to select one **treating physician**" in each field or specialty. La.R.S. 23:1121(B)(1) (emphasis added).

*Id.* at 851-52. This court concluded that a physical therapist is not considered a physician but, instead, falls within the definition of the broader term of medical practitioner. Therefore, because La.R.S. 23:1121(B)(1) grants the employee the right to choose a treating physician and does not grant the employee the right to choose a medical practitioner, this court held that the plaintiff had no right to select a physical therapist.

The WCJ also found it noteworthy, as do we, that Ms. Miller's treating physician, Dr. Lechtenberg, did not challenge the selection of Total Physical Therapy as the facility chosen by CSPH to treat Ms. Miller. Considering the foregoing, we agree with CSPH and find no legal error in the WCJ's denial of Ms. Miller's request to choose her physical therapist.

Ms. Miller has also requested an additional award of attorney fees for work performed on appeal. "In *Nash v. Aecom Tech. Corp.*, 07-990, p. 8 (La.App. 3 Cir. 2/6/08), 976 So.2d 263, 268, this court held that '[a] workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/insurer's unsuccessful appeal.'" *Bethel v. Lake City Trucking*, 11-1542, p. 9 (La.App. 3 Cir. 4/4/12), 87 So.3d 338, 344. Therefore, we award Ms. Miller an additional $5,000.00 in attorney fees for work performed on appeal.

**DECREE**

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed, and we award $5,000.00 in attorney fees for work performed on this appeal. All costs are assessed to Defendant/Appellant, Christus St. Patrick Hospital.

**AFFIRMED AND RENDERED.**