GUIDRY, J.'
|gThe employer and workers’ compensation insurer appeal a judgment of the Office of Workers’ Compensation Administration awarding the claimant supplemental earning benefits (SEBs). Based on our consideration of the evidence presented and the relevant law, we vacate the judgment in part and remand for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
On October 15, 2013, the claimant, Kenneth Andrews, filed a disputed claim for compensation against his employer, Thrasher Construction, Inc.,[1] and its workers’ compensation insurer, SeaBright Insurance Company (collectively “defendants”). In the disputed claim form, the claimant stated that he was injured on January 7, 2013, when some of the boards of a scaffold he was standing on flipped up and caused him to fall. As he described the incident:. “I was about five stories up. I was hooked to the bar. Once I leaned over yrath the paint to let it down, the board just flipped from under me. I fell and the ropes caught my arm, and it just— I was tangled on both sides. That’s what stopped me from going all the way down.” As a result of the incident, the claimant said he sustained injuries to .his wrist, elbow, arm, shoulder, knees, and back. The claimant worked as a journeyman for Thrasher, performing such work as caulking, painting, plastering and cement finishing.
, A few weeks after filing his disputed claim for compensation, the claimant filed a motion for, “expedited” summary proceedings to lift the suspension of his benefits pursuant to La. R.S. 23:1201.1(K)(8)(a)(vii). Therein, he alleged that the employer/payor arbitrarily and capriciously terminated his workers’ compensation benefits for failure to submit to a medical exam. In the motion, he argued that the ^suspension of benefits was not justified because the requested medical exam was completed on the same date the notice of suspension was filed.
Thereafter, the defendants filed various exceptions raising the objections of unauthorized use of summary proceedings, prematurity, vagueness, ambiguity, and no cause of action. Following'a hearing on the exceptions, held November 22, 2013, the Office of Workers’ Compensation Judge (OWCJ) ordered the claimant to amend his claim form within 15 days to correctly identify the party sued. All of the remaining objections to the disputed claim form were dismissed as moot. The claimant filed an amended petition on December 3, 2013, wherein he identified the defendant employer'as Thrasher Construction, Inc. Despite the amendment, on Match-2, 2014, the defendants again filed exceptions raising the objections- of no cause of action, unauthorized use of summary proceedings, prematurity, vagueness and ambiguity. A scheduled hearing on the re-urged objections was' continued to allow- the claimant to further' amend his petition. ■' '
On April 23, 2014, a . partial order to dismiss was signed by the OWCJ wherein the claimant voluntarily dismissed his claims for penalties and attorney fees, choice of physician, and physical therapy. On July 21, 2014, the claimant filed a motion seeking to change the venue of the proceedings, as he had moved from Baker *95 to New Orleans. The motion was opposed by the defendants and later denied by the OWCJ.
The matter eventually proceeded to a trial on the merits, which was held on January 12, 2015. Following the trial, the OWCJ rendered judgment in favor of the claimant, finding that. his. right shoulder and lumbar conditions were the only medical complaints that remained unresolved. Consequently, the OWCJ ordered that the claimant be granted medical treatment in accordance with the Medical Treatment Guidelines and specifically authorized the claimant’s continued treatment with Dr. Michael Robichaux for his right shoulder and Dr. Joseph RBoucree for his lumbar condition. The OWCJ also awarded the claimant supplemental earnings benefits (SEBs) at the temporary, total disability rate, from September 13, 2013, and continuing.[2] Finally, in that judgment, the OWCJ ordered that a functional capacity evaluation (FCE) of the claimant be performed as prescribed by Dr. Thad Broussard, the doctor who performed an independent medical exam (IME) of the claimant.
The defendants have suspensively appealed the judgment, alleging that the OWCJ improperly awarded the claimant SEBs without the claimant making a pri-ma facie showing of entitlement, to such benefits.[3]
DISCUSSION
At the outset, we acknowledge that the defendants correctly argue that the initial burden of proof lies with the claimant to prove entitlement to SEBs. In order to receive an award of -SEBs, -a claimant bears the initial burden of proving by a preponderance of the evidence that his work-related injury rendered him unable to earn ninety percent of his pre-injury wages. La. R.S. 23:1221(3)(a). Once a claimant establishes a prima facie case, the burden shifts to-the employer to show that the claimant is physically capable of work and that the work was offered or available in the reasonable geographic region.' La. R.S. 23:1221(3)(c)(i). On such a-showing, the burden then shifts back to the claimant to prove by clear'and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial Lpain. La. R.S. 23:1221(3)(c)(ii); Lang-Parker v. Unisys Corporation, 00-0880, p. 15 (La.App. 1st Cir.10/5/01), 809 So.2d 441, 451.
We disagree, however, with the defendants’ assertion that the OWCJ “skipped” the claimanf's initial burden'of proof, and in so doing, impermissibly shifted the burden to the defendants to show that the claimant was physically capable of work and that work was offered or available in a reasonable geographic regibn. Instead, the record shows that the OWCJ simply found the claimant’s entitlement to SEBs *96 was established based on the medical reports of Dr. Joe Morgan, the doctor who examined the claimant on behalf of the defendants for the purpose of obtaining a second medical opinion, and Dr. Brous-sard, the IME doctor. In particular, following his examination of the claimant on January 6, 2014, Dr. Broussard opined:
I think the patient does have spondylitic changes that predated the accident. I think he probably can return to gainful and functional employment but in fairness to ah parties, I think it is reasonable to obtain a Functional Capacity Evaluation with validity criteria, particularly since he has findings that are non-organic on my exam. Once the F.C.E. has been completed [I] would allow him to return to gainful and functional employment within the confines of the F.C.E.[4]
In Collins v. Patterson Drilling, 39,668, p. 2 (La.App.2d Cir.5/11/05), 902 So.2d 1264, 1266, the IME doctor recommended performing a FCE to determine the extent of the claimant’s limitations. However, unlike the present matter, the OWCJ in that case concluded that “there was no evidence to support a claim for SEBs” and denied the claimant benefits; but the judge still ordered the defendants to provide the FCE that had been recommended by the IME doctor. Collins, 39,668 at p. 4, 902 So.2d at 1267.
ROn appeal, the Second Circuit found that without the FCE and further evaluation of the claimant’s limitations pursuant thereto by the IME doctor, the IME report was incomplete. The court found that assessment of the claimant’s limitations was “essential” to the OWCJ’s resolution of whether the claimant was entitled to disability benefits. Thus, the appellate court remanded the case for a new trial to determine the claimant’s entitlement to disability benefits once the FCE was completed and the IME doctor had completed his evaluation of the claimant’s limitations in light of the FCE, Collins, 39,668 at p. 8, 902 So.2d at 1269.
Mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage, Hebert v. Terrebonne Parish School Board, 03-1444, p. 10 (La.App. 1st Cir.5/14/04), 879 So.2d 222, 229, and based on Dr. Broussard’s suggestion that a FCE be obtained, we find, like our brethren at the Second Circuit, that insufficient information was before the OWCJ for her to properly render a decision in this matter, especially considering that in her judgment, she included the added order that a FCE be completed as prescribed by the IME doctor, Dr. Broussard. Consequently, rather than simply reversing the judgment of the OWCJ, we will vacate the award of SEBs contained in the judgment and remand this matter for a new trial on the claimant’s entitlement to indemnity benefits once the FCE is completed and a determination is made 'as to any employment limitations.[5] See Collins, 39,668 at p. *97 8, 902 So.2d at 1269. Also, we find the claimant’s testimony regarding some of the difficulties he experienced in performing his duties after he returned to work following the accident further support a remand in this matter.
17As for the fact that the claimant initially returned to work for Thrasher following his injury, but then his employment was terminated because he engaged in a fight while on the job, we find that under the circumstances presented, this fact alone should not preclude the claimant from recovering SEBs.
In Poissenot v. St. Bernard Parish Sheriffs Office, 09-2793, p. 9 (La.1/9/11), 56 So.3d 170, 176, the Louisiana Supreme Court recognized that where the employee goes back to his pre-injury job and then is terminated for a reason beyond the employer’s control and totally unrelated to the injury, this strongly suggests that his inability to earn ninety percent of his pre-injury wages was not the result of his injury and that the employee is in fact ablé to earn ninety percent of his pre-injury wages in some capacity. However, the court additionally recognized that an employer cannot avoid paying compensation benefits to an injured employee by creating a job that accommodates the injured employee’s work restrictions and then firing the injured employee. Poissenot, 09-2793 at p. 10, 56 So.3d at 177.
Termination does not automatically destroy one’s entitlement to SEBs. See Miller v. Christus St. Patrick Hospital, 12-370, p, 2 (La.App. 3d Cir.10/24/12), 100 So.3d 404, 406, writ denied, 12-2467 .(La.1/11/13), 107 So.3d 619. It is a claimant’s refusal to accept employment that fits within his abilities and/or disabilities that is made available to him that precludes an award of SEBs. Palmer v. Schooner Petroleum Services, 02-397, p. 12 (La.App. 3d Cir.12/27/02), 834 So.2d 642, 650, writ denied, 03-0367 (La.4/21/03), 841 So.2d 802; see also Blanchard v. Federal Express Corporation, 95-0349, p. 13 (La.App. 1st Cir.11/9/95), 665 So.2d 11, 13 (wherein the claimant refused employment offered by the employer because the employment interfered with his religious activities, and the court found the claimant was not entitled to SEBs because of that refusal).
| sIn Miller, the claimant was terminated for allegedly violating a hospital policy by posting threatening comments about her supervisor on Facebook. Miller, 12-370 at p. 3, 100 So.3d at 407. Although the claimant did not deny that she posted comments on social media while at work, she did deny that the posting was directed at her supervisor or that she violated the standards of behavior required by the hospital. Miller, 12-370 at p. 6, 100 So.3d at 409. The OWCJ awarded the claimant SEBs, and the employer appealed, asserting that the claimant was not entitled to SEBs when the loss of her employment was due to her own actions. Miller, 12-370 at p. 4, 100 So.3d at 408. Because the claimant disputed the reason for her termination, the appellate court found the ruling of the OWCJ was proper. Miller, 12-370 at pp. 7-8, 100 So.3d at 409-10.
In her reasons for judgment, the OWCJ in that case observed that “[l]awful termination, like fraud, cuts through everything; but the reasons for firing here are murky. And whether it’s a legal termination or not isn’t a question for this forum as workers’ compensation courts are not in the business of determining whether a firing was *98 appropriate,” Miller, 12-370 at p. 3, 100 So.3d at 406-07. The appellate court agreed, holding that “[t]he question of whether Ms. Miller’s termination was for cause is a.legal determination to be decided by a district court, not the administrative agency determining workers’ compensation matters.” Miller, 12-370 at pp. 6-7, 100 So.3d at 409. See also La. Const. art. 5, § 16(A)(1) and La. R.S. 23:1310.3(F). Compare Palmer v. Alliance Compressors, 05-478 (La.App. 3d Cir.11/2/05), 917 So.2d 510, writ denied, 05-2440 (La.3/24/06), 925 So.2d 1231 and Grillette v. Alliance Compressors, 05-982 (La.App. 3d Cir.2/1/06), 923 So.2d 774 (wherein the claimants in those cases stipulated that their terminations were for cause and so the .courts found it proper to deny the claimants SEBs on the basis of the terminations).
|9In the present matter, the claimant gave the following description regarding how the fight occurred:
I was standing up talking to'my'boss, A young gentleman'twice, three times, my size, walked up to me. My supervisor told him to get out of my space. The young man hit me; I was over him. He didn’t care for me. And he thought that he could just bully — and for some strange reason he felt that he' cotild bully me. Well, h'e hit me, and I hit him back, and we both were terminated.
He further explained that he always had guys do things “safely” and that he had á good relationship with guys that did not care for him) but’he stated “[t]his guy did not care for' me, but I didn’t start the fight.” Prior to his termination, but after the January 7, 2013 workplace accident, the claimant further testified about his return to work:'
I went back to ' work because I was running the job, and I.wanted to be there on the job to make sure everything was being done. But my knees were hit by the scaffold board, and my back, was hurting me a lot. And even though I went back to work, I started having problems. I’ve never missed a day of work, never. It didn’t matter if I had any kind of cold or anything, I went to Work. I was always asking for more work. :
The claimant testified that he had worked for Thrasher since about 1985.'
The only evidence offered by the defendants regarding the fight, that resulted in the claimant’s termination was the testimony of the claimant himself. It was not established .or even asserted that the claimant violated any specific policy of the company, and as the claimant described the matter, he denied any fault in causing the fight. In her reasons for judgment, the OWCJ expressly found the claimant to be “a very credible witness.” Thus, in light .of the foregoing, jurisprudence, including the, principle that workers’ compensation is to be liberally construed in favor of coverage, and considering the circumstances of the termination, as described by the claimant, we cannot say that the OWCJ erred in finding that the claimant’s termination should not, in and of itself, preclude his .entitlement to SEBs.
^CONCLUSION
Having found that the evidence before the- OWCJ was insufficient for her to properly decide the issue of the claimant’s entitlement to indemnity beñefits, and in particular, supplemental earnings benefits, we vacate the award of SEBs and remand this matter for a new trial On the issue of the claimant’s entitlement to the same after an FCE has been performed. All costs of this appeal are cast to the defendants, Thrasher Construction,. Inc. and SeaBright Insurance Company.
*99 VACATED IN PART AND REMANDED.
CHUTZ, J., concurs,

. In the original disputed claim for compensation, the claimant incorrectly identified the company as Thrasher Waterproofing, and .in the judgment, the company is incorrectly referred to as Thrasher Construction Company.

. Part of the sum awarded the claimant was for indemnity benefits the OWCJ found were ■ owed from the date prior benefits paid to the claimant were terminated to the date of trial. The OWCJ awarded the claimant four percent interest on that portion of the award from the date each installment would have been owed until paid. .

. During the pendency of this appeal, by a letter dated July 26, 2015, the claimant submitted several documents to this court; however, as an appellate court, we have no jurisdiction to review evidence that is not in the record on appeal, and we cannot receive new evidénce. Niemann v. Crosby Development Company. L.L.C., 11-1337, p. 7 (La.App. 1st Cir.5/3/12), 92 So.3d 1039, 1044; Thus; to the extent the claimant’s pro se letter could be construed to be a motion to supplement the record before us and to consider the evidence offered, we deny the claimant’s request.

. In a report dated September 17, 2013, Dr. Morgan, the second opinion doctor, opined: "I consider that he may return to work at his usual occupation without restrictions based on any injury that he may have sustained on l-8-13[sic]. It should be noted that his cervical spondylosis and his problem with the right shoulder both of which predate this accident may be limiting factors to him." The date of Dr. Morgan’s examination of the claimant was September 10,2013.

. We recognize the defendants’ additional argument that the FCE was not conducted due solely to the fault of the claimant, who, in the course of terminating several retained attorneys, failed to obtain the recommended FCE. At trial, the claimant indicated that the termination of his various attorneys was due to his dissatisfaction with the way they were handling his ease, including failing to keep him properly informed about scheduled examina *97 tions. As there is a lack of any explicit proof in the record indicating that the claimant deliberately avoided obtaining the FCE, we believe our ruling based bn the FCE remains proper.