STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-982

YVONNE GRILLETTE

VERSUS

ALLIANCE COMPRESSORS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO.  03-03455
HONORABLE SHERAL KELLAR, CHIEF JUDGE
OFFICE OF WORKERS' COMPENSATION

\*\*\*\*\*\*\*\*\*\*

J. DAVID PAINTER
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.

AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

Mark A.  Watson
P.O. Box 1711
Alexandria, LA 71309
Counsel for Defendant-Appellant:
    Alliance Compressors

Bray Williams
P.O. Box 15
Natchitoches, LA 71458-0015
Counsel for Plaintiff-Appellee:
    Yvonne Grillette

**PAINTER, Judge.**

This is a workers' compensation case wherein the Defendant, Alliance Compressors ("Alliance"), appeals the judgment of the Workers' Compensation Judge ("WCJ") finding the injured employee, Yvonne Grillette ("Grillette"), to be entitled to supplemental earnings benefits ("SEB"), awarding penalties and attorney's fees relative to that finding, and awarding attorney's fees for untimely payment of indemnity benefits. For the following reasons, we affirm in part, reverse in part, and render.

## FACTUAL AND PROCEDURAL BACKGROUND

Grillette was employed by Alliance in Natchitoches, Louisiana. Since beginning her employment with Alliance on or about April 2, 2001, she had three work-related accidents. The first accident was on May 6, 2001, when she injured her right foot in a forklift accident; the second accident was on January 18, 2002, when she suffered injuries to her back while lifting a box and was diagnosed with carpal tunnel syndrome; and the third accident was on January 4, 2003, when she slipped and fell, aggravating both her prior carpal tunnel syndrome and prior back injury. On March 31, 2003, Grillette was terminated. The parties stipulated that the termination was for cause. Beginning January 27, 2004, when Grillette's treating orthopedist, Dr. John D. Sandifer, declared her to be totally disabled due to her injuries, Grillette was paid total temporary disability (TTD) benefits of $226.40 based on an average weekly wage of $339.60.

Grillette filed a motion for partial summary judgment on the issue of late payment of TTD benefits for the period of January 29, 2002 through April 5, 2002. Alliance conceded that these benefits were paid late. Judgment was rendered finding that benefits during this period were paid late and imposing a penalty of $2,000.00

1

for said late payment. The issue of attorney's fees in conjunction with this issue was referred to the merits. Grillette also moved for summary judgment on the issue of her average weekly wage and TTD benefits from January 27, 2004; however, summary judgment was denied on these issues.

The parties agreed to submit the matter on briefs along with joint stipulations as to both issues and facts and depositions. Following consideration of the matter, the WCJ rendered judgment in favor of Grillette with the following awards:

1. SEB for the period from March 31, 2003 through January 27, 2004 based on an average weekly wage of $379.60 and a workers' compensation rate of $235.07;

2. Weekly indemnity benefits from January 27, 2004 until further order of the court, based on an average weekly wage of $379.60 and a workers' compensation rate of $253.07, and subject to a credit for the amount of weekly benefits paid by Alliance from January 27, 2004;

3. A twelve percent penalty due on all wage benefits due under this judgment;

4. Attorney's fee of $10,000.00;

5. Legal interest on all sums due, with legal interest on all weekly indemnity benefits due from the date of judicial demand until paid, and legal interest due on the penalty and attorney's fee from the date of judgment until paid plus all costs of court.

Alliance appeals, seeking review of the following assignments of error:

1. The WCJ erred in holding that an employee is entitled to SEB when the employee is terminated "for cause" due to attendance violations from a job provided by the employer which was approved by the employee's treating physician and which paid one hundred percent of the employee's pre-accident wages;

2. The WCJ erred in finding that the employer was arbitrary and capricious, and thereby liable for penalties and attorney's fees and in failing to pay SEB to an employee who was terminated for cause;

3. The WCJ erred in awarding attorney's fees for the late payment of indemnity benefits which were brought current by the employer without the involvement of any attorney and prior to the institution of any disputed claim.

Grillette answered the appeal, seeking an award of attorney's fees for work done on appeal, and further asserting the following assignments of error:

2

1. The WCJ erred in awarding the lesser of two penalties allowed under La.R.S. 23:1201(F); and

2. The WCJ erred in failing to award multiple penalties and attorney's fees under La.R.S. 23:1201(F) for the nonpayment of SEB and the improper calculation of TTD.

Apparently, Alliance does not appeal the award of TTD, or the WCJ's determinations of the average weekly wage as $379.60 and the workers' compensation rate as $253.07. Thus, the pivotal issue in this case is Grillette's entitlement to SEB for the period from March 31, 2003 to January 27, 2004. For the reasons that follow, we find that she is not entitled to SEB for this period and reverse that portion of the judgment of the WCJ as well as the award of penalties and attorney's fees in that respect.

**DISCUSSION**

This court has recently recognized that "the determination of whether an employee is entitled to SEB is necessarily a facts and circumstances inquiry in which courts must be mindful of the jurisprudential tenet that workers' compensation law is to be construed liberally in favor of finding coverage." *Palmer v. Alliance Compressors*, 05-478 (La.App. 3 Cir. 11/02/05), ___ So.2d ___ (*citing Manpower Temporary Services v. Lemoine*, 99-636 (La.App. 3 Cir. 10/20/99), 747 So.2d 153). The factual findings of the WCJ may not be set aside in the absence of manifest error or unless they are clearly wrong. *Lacaze v. Alliance Compressors*, 03-1566 (La.App. 3 Cir. 4/14/04), 870 So.2d 1150. However, in this case, we find that the WCJ erred as a matter of law in finding Grillette was entitled to SEB. As such, where "legal error is found and a complete record has been made, the appellate court is to conduct a de novo review of the record." *Smith v. Smith*, 615 So.2d 926 (La.App. 1 Cir.), *writ denied* 617 So.2d 916 (La.1993).

3

In essence, Grillette contends that regardless of the reasons for her firing, she was still restricted to light duty work for the relevant time period and is entitled to SEB. Alliance contends that because of Grillette's "for cause" termination, it is not responsible for SEB.

We are mindful of the fact that "[t]he purpose of SEBs is to compensate an injured employee for the wage-earning capacity lost as a result of a work-related accident." *Lacaze*, 870 So.2d at 1154 (citing *City of Jennings v. Dequeant*, 96-943 (La.App. 3 Cir. 11/5/97), 704 So.2d 264, *writ denied* 98-0610 (La. 4/24/98), 717 So.2d 1174). An employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his or her inability to earn ninety percent (90%) or more of the average pre-injury wage under the facts and circumstances of the individual case. *Lacaze*, 870 So.2d at 1155 (quoting *Freeman v. Poulan/Weed Eater*, 93-1530, p. 7 (La. 1/14/94), 630 So.2d 733, 739); La.R.S. 23:1221(3)(a).

A stipulation operates as a judicial confession and is binding on all parties and the court. La.Civ. Code art. 1853; *Winford v. Conerly Corp.*, 04-1278 (La. 3/11/05), 897 So.2d 560. In this case, Grillette necessarily fails in meeting her burden of proof by virtue of the stipulation that she was terminated for cause. We note with approval the WCJ's finding that the termination was for cause wholly unrelated to her accident, and we further note that Grillette concedes this finding in her brief. This finding leads us to the conclusion that there is no reason that Grillette could not have continued to work for Alliance for the period from March 31, 2003 to January 27, 2004, but for her termination for cause. As we have said, this results in her inability to meet her burden of proof, and the WCJ erred as a matter of law in finding otherwise.

4

Grillette relies heavily on the cases of *Palmer v. Schooner Petroleum Services*, 02-397 (La.App. 3 Cir. 12/27/02), 834 So.2d 642, *writ denied*, 03-367 (La. 4/21/03), 841 So.2d 802, and *Lacaze*, which coincidently involves the same employer, for the proposition that the termination of employment does not destroy that employee's entitlement to SEB. Reliance on these cases, however, is misplaced as we have recently ruled in *Palmer v. Alliance Compressors*, ___ So.2d ___ . As we noted in *Palmer v. Alliance Compressors*, this court, in the *Palmer v. Schooner Petroleum Services* case, recognized that termination in and of itself does not end entitlement to SEB. Schooner Petroleum Services contended that the termination at issue was due to substandard job performance. However, this court found manifest error in the WCJ's factual determination of poor work performance such that the claimant was entitled to SEB despite his termination.

In *Palmer v. Alliance Compressors*, we also discussed the *Lacaze* case wherein the employee returned to work after being injured on the job and was immediately suspended for two weeks. Benefits were terminated at that time. Lacaze returned to work after the suspension, but was terminated several days later. Nonetheless, this court found her entitlement to SEB did not cease upon her termination because Lacaze did not refuse to accept employment, but rather was not permitted to work due the suspension and termination imposed by Alliance.

We reiterate our conclusions in *Palmer v. Alliance Compressors* that an employer cannot avoid paying benefits by creating a job that accommodates any work restrictions and then firing the injured employee without cause and that an injured employee cannot refuse to accept suitable employment or blatantly violate company policy without the possibility of recourse by the employer.

5

"Where the claimant has been released to light duty work and refuses his employer's offer of light duty work at the same wage and hours, he is not entitled to SEB." *Fusilier v. Slick Const. Co.*, 94-11, p.4 (La.App. 3 Cir. 6/1/94), 640 So.2d 788, 791. As in *Palmer v. Alliance Compressors*, we can decide the case at bar on this rationale, consistent with our prior holdings in *Palmer v. Schooner Petroleum Services* and *Lacaze*. Alliance provided several jobs to Grillette after her injury that, according to her treating orthopedist, accommodated the restrictions placed upon her. In fact, Dr. Sandifer testified in deposition that as of September 6, 2002, Alliance had been following the restrictions he had placed upon her employment and that the job she was doing at that time was within the range of her capabilities. Before March 3, 2003, Dr. Sandifer reviewed a video of two different jobs available to Grillette at Alliance. The first was a masking type job which involved light lifting of a part placed on a compressor and placing a small magnet of a compressor on an assembly line which could be done while either standing or sitting. The other job involved working in a sniffer booth. Dr. Sandifer testified that the masking type job would be appropriate for her if she was allowed to wear her wrist splints and work for forty-five minutes at a time with fifteen minute breaks in between for eight hour shifts. The fact that a job is no longer available to Grillette due to her "for cause termination" is no different from her refusing to accept the job in the first place and, thus, terminates her entitlement to SEB.

Having found that Grillette failed to meet her burden of proving entitlement to SEB, we further find that Alliance reasonably controverted Grillette's claims and that its actions were neither arbitrary nor capricious. Accordingly, we reverse the award of penalties and attorney's fees related to this issue.

6

With respect to the issue of attorney's fees awarded for the untimely payment of benefits for the period of January 29, 2002 through April 5, 2002, we note that the WCJ awarded a total of $10,000.00 in attorney's fees for both the failure to pay SEB and the untimely payment of benefits during this period without specifically breaking down the total amount awarded. Since the award was not itemized, we reverse the total award of attorney's fees and instead award $2,000.00 in attorney's fees solely attributable to the late payment of benefits for this period.

On a prior summary judgment, Alliance conceded the late payment of TTD benefits for this period, and the WCJ awarded penalties of $2,000.00. Alliance did not appeal the award of penalties. The late payment of TTD benefits for this period was not at issue at trial; however, attorney's fees for this period of time were at issue. Grillette concedes that Alliance paid the benefits in 2002, prior to the filing of suit on May 13, 2003. However, we do not agree with Alliance that it should not be held liable for attorney's fees for this late payment because it paid benefits before claimant retained counsel. We find that this situation is analogous to the situation in *Batiste v. Capitol Home Health*, 96–799, pp. 10-11 (La.App. 3 Cir. 5/7/97), 699 So.2d 395, 401, wherein we stated:

> [A]s a narrow proposition, we are not in a position to so restrict our field of vision as to second-guess the finding of the hearing officer that it was the employer's prior inexcusable actions which compelled claimant to retain counsel, nor that the employer's actions were less than arbitrary and capricious. Second, in the broader perspective, we are not inclined to discourage the retention of counsel by an injured, vulnerable employee who is faced with the prospect of an adversary possessing far superior experience and resources; after all, it is precisely to eliminate such bilateral inequalities of bargaining strength that our society has erected its pillars of law, including those providing attorney fees in workers' compensation cases, in the first place.

This case is distinguishable from *Guidry v. Cytec Industries*, 00-197 (La.App. 3 Cir. 10/11/00), 772 So.2d 194, in that the claimant in *Guidry* never retained an attorney.

7

Thus, we award $2,000.00 in attorney's fees for the late payment of benefits for the period from January 29, 2002 through April 5, 2002.

Furthermore, as we have reversed the award of penalties and attorney's fees, our findings pretermit a discussion of Grillette's assignments of error.

## DECREE

For the foregoing reasons, we find that Yvonne Grillette was not entitled to supplemental earnings benefits for the period from March 31, 2003 to January 27, 2004 and reverse the judgment of the WCJ in that respect. Having found that Grillette was not entitled to SEB, we further find that Alliance reasonably controverted her claims and that its actions in that regard were neither arbitrary nor capricious. Thus, we also reverse the WCJ's award of penalties and attorney's fees in that respect. We further award attorney's fees in the amount of $2,000.00 for the late payment of benefits for the period from January 29, 2002 through April 5, 2002. In all other respects, the judgment is affirmed. Costs of this appeal are hereby assessed equally between the parties.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**