GREG G. GUIDRY, Judge.
12The Plaintiff, Bobbie McCray, appeals a workers’ compensation judgment partially denying her claims against the Defendant, Intralox, Inc. We affirm in part and remand.
The Plaintiff worked as an inspector/packer with the Defendant. On August 5, 2004, . she lifted a forty-pound box and injured her upper arm and shoulder. She was treated by several physicians, and ultimately underwent shoulder surgery on April 1, 2005. She returned to work sporadically between April and June of 2005, in part pursuant to the orders of her orthopedic surgeon, Dr. Thomas Lyons. In late June, she was terminated for excessive non-medically authorized “absence points.”
The Plaintiff subsequently filed a disputed claim for compensation seeking temporary total disability benefits (TTD) for her neck and shoulder, supplemental earnings benefits (SEB), vocational rehabilitation services, a | .Junctional capacity evaluation, and penalties and attorney’s fees. The case was tried in June of 2007. A written judgment was rendered September 14, 2007. The workers’ compensation judge denied the Plaintiffs claim for a neck injury, finding it was not related to the job accident; denied her claim for SEB following her termination from employment; and denied the claim for penalties and attorney’s fees and costs. The judge awarded the Plaintiff TTD benefits for medically approved absences during certain periods in 2004 and 2005; awarded her a permanent partial disability rating for her left arm; ordered the Defendant to provide her with a functional capacity evaluation to *269 establish her return to work level; and ordered the Defendant to provide vocational rehabilitation services to the Plaintiff to assist her in finding gainful employment.
On appeal, the Plaintiff asserts that the workers’ compensation judge erred in determining the disability issue before the functional capacity evaluation, permanent partial disability rating and vocational rehabilitation services are performed. She also argues that the trial judge erred in denying SEB after she was terminated from her job due to absences that were related to her injury.
The Plaintiff contends that the judgment is inconsistent. She argues that since the judge ordered further tests, as requested by the Plaintiff, the disability determination is premature. Until the tests are performed, the Plaintiffs abilities and restrictions are unknown. The Plaintiff notes that vocational rehabilitation services are required under SEB to show that the injured person is incapable of earning his/ her pre-accident wages, citing La.R.S. 23:1226 A. Furthermore, a permanent partial disability rating is required to determine whether the Plaintiff is entitled to any scheduled benefits for impairment of the arm under R.S. 23:1221(4). Finally, the Plaintiff argues that Dr. Lyons concluded that a | ¿functional capacity evaluation is necessary to determine what restrictions the Plaintiff has as a result of the shoulder surgery.
The Defendant answered the appeal to contest the judge’s findings in fact in favor of the Plaintiff on the basis that the Plaintiff failed to prove any disability.
After the incident in 2004, the Plaintiff complained of a “charley horse” or muscle cramp in her bicep. The pain evolved to her shoulder and neck. She missed a few days of work, treated with several physicians and was released for modified duty. In September, she saw Dr. George Murphy, complaining of neck pain and shoulder pain. He placed her on disability until November 1, 2004, when she was again released to work. At all times following the accident, the Defendant offered her the lightest job available.
When the Plaintiffs complaints continued, Dr. Murphy recommended a referral to another orthopedic surgeon. The Plaintiff chose Dr. Lyons. He first saw the Plaintiff in March of 2005. Lyons concluded that the neck issue had resolved itself. For the next year, Dr. Lyons took the Plaintiff off of work several times, releasing her to return to work with restrictions on the use of her left upper body. The Defendant accommodated the Plaintiffs restrictions, and she continued to work until she underwent arthroscopic surgery in April of 2005. Dr. Lyons found that the rotator cuff was normal, but that the Plaintiff had a bicep tendon abnormality which did not require surgical repair, an acromial arthritis condition, and some frayed ligaments. After the surgery, Dr. Lyons placed her on and off work several times due to the Plaintiffs continued complaints of pain. She was released to return to work in a modified capacity each time.
| .¡Following surgery, the Plaintiff was released to work on April 27, 2005. Between then and her next visit with Dr. Lyons in May, however, she only worked 1.99 hours. On May 9, 2005, she complained to Dr. Lyons that she was having difficulty with increased use of her arm at work. He removed her from duty for two weeks to concentrate on physical therapy, but she was to return to work on May 23, 2005, with restrictions on the use of her arm. She returned to work pursuant to her regular schedule on May 25, 2005, for 12.33 hours. Between that day and her next doctor visit on May 30, 2005, again, without medical authorization, she failed to return to work. For the second time, Dr. *270 Lyons ordered her off work so she could concentrate on physical therapy. He authorized her to return to work on June 13, 2005, adding restrictions on carrying or lifting any objects greater than 5 pounds, and was told not to lift her arm overhead. On June 13th, the Plaintiff returned to work for .12 hours. She never again returned to work force.
When she did not return to work, the company nurse set up a conference with herself, Dr. Lyons, the Defendant’s Safety Manager, and the Plaintiff, who was unrepresented at the time, but made an appearance. During that conference, the doctor conducted an examination of the Plaintiff to confirm his opinion that the Plaintiff could have continued working under the work restrictions assigned when the Plaintiff returned to her job on June 13, 2005. During that examination, she complained of neck pain for the first time since March. He also reviewed video of various modified jobs offered by the Defendant, and felt that the Plaintiff could perform those duties with her restriction. Again, he released her to work with the restrictions on her upper body and overhead use of her arm.
| (¡Based on Dr. Lyons’ opinion, the Defendant terminated the Plaintiff for excessive absences policy. They used a point system, in which medically approved absences were not considered, and the unapproved absences exceeded the points allowed to the employee.
The Plaintiff denied knowing that Dr. Lyons thought she could work under the restrictions assigned. The record, however, shows that no disability slips were issued after June 13, 2005, and the evidence shows that she attended the conference meeting with Dr. Lyons.
In September of 2006, another cervical MRI was taken and compared to the first MRI from 2004. The test showed additional degeneration of the neck that Dr. Lyons attributed to normal aging degeneration. The doctor noted that degenerative conditions can prompt episodes of cervical pain for no reason. Furthermore, in his opinion he believed that any neck problem resulting from the accident had resolved itself, based on the two negative magnetic resonance imaging tests (MRI), the lack of neck complaints when the Plaintiff first saw him, and the lack of any aggravating circumstances subsequent to the initial complaint in September of 2004.
In regard to her shoulder, Dr. Lyons did not intend for the “no use of the left arm” restriction to be permanent. He expected the Plaintiff to recover within four to eight months after the surgery. Nevertheless, in order to determine the source of the pain, he ordered a nerve conduction study, which ruled out ulnar nerve involvement or carpel tunnel syndrome, neither of which he would attribute to the accident in any event.
The Plaintiff did not see Dr. Lyons again until August of 2006. Dr. Lyons stated the Plaintiff had reached maximum, medical improvement by August 16, [72006. He could not explain her continued shoulder complaints; however, he feels that the Plaintiff nevertheless is going to have permanent restrictions with the use of left arm. Before assigning those, however, he needs a functional capacity evaluation (FCE), but was waiting until he resolved her complaints unrelated to the accident.
The Plaintiff admitted that she had no restrictions on her left arm at that time, and that she could have returned to Dr. Lyons as often as needed. She never looked for another job after leaving the Defendant’s employ.
To be entitled to workers’ compensation benefits, the claimant must prove that there was a work-related accident, *271 resulting in a disability that was caused by the accident. Wiley v. Dijon Services, Inc., 02-242 (La.App. 5 Cir. 10/16/02), 831 So.2d 317, 319, writ denied, 02-2612 (La.12/13/02), 831 So.2d 990. The claimant bears the burden of establishing this causal connection by a reasonable preponderance of the evidence. Id.; Quinones v. U.S. Fidelity and Guar. Co., 93-1648 (La.1/14/94), 630 So.2d 1303,1306-07.
The determination of whether an employee is entitled to workers’ compensation benefits is based on the facts and circumstances of each case, considering that the laws governing workers’ compensation must be construed liberally in favor of the employee. Synigal v. Vanguard Car Rental, 06-761 (La.App. 5 Cir. 1/30/07), 951 So.2d 1197, 1198; Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). An appellate court cannot set aside the factual findings of the workers’ compensation judge unless those findings are clearly wrong and the judge has committed manifest error. Synigal, 951 So.2d at 1198.
The evidence shows that the Plaintiff failed to prove a causal relationship between her neck pain and the accident in 2004. Nevertheless, Dr. Lyons has | syet to determine her physical limitations for the work related injury through a FCE test, although he testified that she has reached MMI, and will not need any further medical treatment. The doctor could not explain her continuing complaints, • and felt that a referral to a neurologist was unnecessary.
La. R.S. 23:1221(3)(a) states that an employee may be entitled to supplemental earnings benefits for an injury resulting in his inability to earn wages equal to 90% or more of the wages he earned at the time of the injury. The employee cannot refuse to accept suitable employment or blatantly violate company policy without the possibility of recourse by the employer. Synigal, 951 So.2d at 1199, citing Grillette v. Alliance Compressors, 05-982 (La.App. 3 Cir. 2/1/06), 923 So.2d 774, 778.
Here, the workers’ compensation judge awarding the Plaintiff a permanent partial disability rating for her left arm, ordered the Defendant to provide her with a functional capacity evaluation to establish her return to work level, and ordered the Defendant to provide vocational rehabilitation services to the Plaintiff to assist her in finding gainful employment, yet determined the Plaintiffs disability level without those results. Until such time as the results of those tests are obtained, the disability issues are premature. Even Dr. Lyons pointed out that the Plaintiff was injured and appears to suffer some residual problems. Thus, we find that the workers’ compensation judge erred in making any disability findings at this stage of the proceedings. We further find that the workers’ compensation judge was not manifestly erroneous in awarding the Plaintiff a permanent partial disability rating and ordering the tests.
| ¡Accordingly, the judgment is hereby affirmed in part, and remanded for further proceedings.

AFFIRMED AND REMANDED.