# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 13-448

JOHN WILTZ

VERSUS

TODD'S CAR WASH

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 4
PARISH OF LAFAYETTE, NO. 0907802
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**********

**JOHN E. CONERY
JUDGE**

**********

Court composed of James T. Genovese, Shannon J. Gremillion, and John E. Conery, Judges.

**AFFIRMED.**

Michael Benny Miller
Jacqueline B. Manecke
Miller & Miller
Post Office Box 1630
Crowley, Louisiana 70527-1630
(337) 785-9500
COUNSEL FOR PLAINTIFF/APPELLANT:
	John Wiltz

**Matthew William Tierney**
**Kristine D. Smiley**
**Tierney and Smiley, LLC**
**3535 South Sherwood Forest, Suite 233**
**Baton Rouge, Louisiana 70816**
**(225) 298-0770**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Todd's Car Wash**

**CONERY, Judge.**

The plaintiff, John Wiltz ("Mr. Wiltz"), appeals the judgment of the Workers' Compensation Judge ("WCJ") in favor of Todd's Car Wash ("Todd's"). The WCJ found that Mr. Wiltz's right eye condition and hypertension were not causally related to his work accident and injury, awarded Todd's a credit and offset for all amounts paid in relation to Mr. Wiltz's right eye, denied Mr. Wiltz supplemental earnings benefits ("SEB") both before and after his termination for cause, awarded Mr. Wiltz $8,000.00 in penalties, awarded $8,000.00 in attorney fees, and equally divided the claimant's costs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

It is undisputed that on January 15, 2009, Mr. Wiltz had a compensable work accident during the course and scope of his employment at Todd's when a metal ball struck his left eye. The injury to Mr. Wiltz's left eye required medical treatment, including surgery. He was released to light duty work on March 24, 2009.

Mr. Wiltz claimed that as a result of the accident involving his left eye, he required treatment for glaucoma in his right eye. Additionally, Mr. Wiltz claimed that he developed high blood pressure due to the January 15, 2009 accident and was restricted by his physician to working no more than forty hours a week due to his unstable hypertension. Mr. Wiltz also sought SEB beginning on his return to work on March 24, 2009.

In addition to its defense on the merits, Todd's contended that Mr. Wiltz violated La.R.S. 23:1208 by submitting fraudulent forms and false testimony to the

WCJ concerning the use of a dolly while moving fifty-five gallon drums. Todd's sought dismissal on these grounds.

This matter proceeded to a trial on the merits before the WCJ. Trial began on November 7, 2011, and was continued to February 14, 2012, as Todd's had not completed their case in chief. In the interim, Mr. Wiltz was terminated for cause from his position with Todd's on November 15, 2011, for a violation of company policy. Counsel for both parties stipulated, and the WCJ agreed, that the effect of Mr. Wiltz's termination for cause on his claim for SEB would be heard by the WCJ at the close of Todd's case in chief. The parties entered into the following stipulations prior to and during trial:

1. Mr. Wiltz sustained an accident in the course and scope of his employment with Todd's on or about January 15, 2009, when a steel ball hit him in the left eye.

2. Todd's stipulated to the maximum amount penalties under La.R.S. 23:1201(F) of $8,000.00.

3. Mr. Wiltz's average weekly wage as of January 15, 2009, was $1,000.00.

At the close of evidence, the WCJ took the matter under advisement. On July 9, 2012, the WCJ rendered oral reasons for judgment on the remaining issues, finding that Mr. Wiltz failed to meet his burden of proof that his hypertension was causally related to his accident and that payment for wages or related medical bills for this condition was not owed by Todd's pursuant to La.R.S. 23:1201(A) & (E). The WCJ further found that Mr. Wiltz failed to meet his burden of proof that his right eye condition was causally related to the injury to his left eye and awarded Todd's a credit for all treatment paid for the right eye pursuant to La.R.S. 23:1206. Additionally, the WCJ found that Mr. Wiltz failed to carry his burden of proof showing any further entitlement to SEB pursuant to La.R.S. 23:221(3), either for

2

the time he returned to work on March 24, 2009, through November 15, 2011, or after his termination for cause on November 15, 2011. The WCJ awarded $8,000.00 in attorney fees based on the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, the amount of time devoted to the case, and the results obtained. On the issue of costs, the WCJ found that as the claimant did not prevail on all issues, and Todd's stipulated to the penalties right before trial, only fifty percent of claimant's costs, $996.49, would be assessed against Todd's, with legal interest due according to law. The WCJ reduced the stipulations and reasons for judgment to a written judgment on September 28, 2012. The WCJ also dismissed Todd's claim that Mr. Wiltz violated the provisions of La.R.S. 23:1208,[1] by filing false claim forms and testifying falsely on the issue of lifting fifty-five gallon drums as a work requirement.

## ASSIGNMENTS OF ERROR

Mr. Wiltz perfected a devolutive appeal from the September 28, 2012 judgment, presenting seven assignments of error:

> 1.) The workers' compensation judge erred in failing to award disability benefits.
>
> 2.) It was error for the workers' compensation judge to require that Mr. Wiltz first present evidence on Todd's Car Wash's Motion to Terminate Benefits due to Mr. Wiltz being terminated from his job at Todd's Car Wash.
>
> 3.) The workers' compensation judge erred in finding that Mr. Wiltz was terminated for cause and in failing to award any supplemental earnings benefits (SEB) after his termination from Todd's Carwash, LLC.

---

[1] This finding is contained in the WCJ's July 9, 2012 oral reasons, but is not referenced in the WCJ's September 28, 2012 judgment. Since there was no judgment on this issue, there was no appeal of this issue.

4.) The workers' compensation judge erred in finding that Mr. Wiltz failed to meet his burden of proof that the right eye condition was causally related to the work injury.

5.) The workers' compensation judge erred in finding that Mr. Wiltz failed to meet his burden of proof and in denying all claims related to his high blood pressure and hypertension.

6.) The workers' compensation judge erred in reducing the attorney's fees to $8,000.00 when Mr. Wiltz obtained the maximum penalties of $8,000.00 allowable under La.R.S. 23:1201(F).

7.) The workers' compensation judge erred in only awarding fifty percent of Mr. Wiltz's expenses when Mr. Wiltz obtained the maximum penalties of $8,000.00 allowable under La. R.S. 23:1201(F).

## LAW AND ANALYSIS

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784 (citations omitted).

In *Green v. National Oilwell Varco*, 10-1041, p. 3 (La.App. 3 Cir. 4/27/11), 63 So.3d 354, 358 (citations omitted), we explained that, "'[t]he determination of coverage is a subjective one in that each case must be decided from all of its particular facts.' This court has held that, in light of that standard of review, 'great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility.'"

Furthermore, a legal error by the WCJ presents a question of law, which is reviewed by determining whether the WCJ's ruling is legally right or wrong.

4

*LeBlanc v. Lafayette Consol. Gov't*, 07-1608 (La.App. 3 Cir. 5/28/08), 983 So.2d 1022.

*Assignment of Error One - Failure of WCJ to Award Temporary Total Disability Benefits*

Mr. Wiltz asserts he is entitled to temporary total disability ("TTD") benefits pursuant to La.R.S. 23:1221(1)(b) for the period of time he missed work after the accident and after his eye surgery on March 12, 2009.

Todd's asserts that this issue was raised for the first time on appeal by Mr. Wiltz and was not presented to the WCJ in the proceedings below, as there is no ruling from the WCJ as to whether or not Mr. Wiltz is entitled to TTD benefits. Mr. Wiltz contends that the issue was before the WCJ based on Mr. Wiltz's answer to Section 2 (c) of the Pretrial Questionnaire, entitled "Claims To Be Litigated At The Hearing," wherein it states, "Whether claimant is entitled to weekly compensation benefits."

The determination of whether a claimant is entitled to TTD benefits is a factual issue to be decided by the WCJ and is governed by La.R.S. 23:1221(1). Louisiana Revised Statutes 23:1221(1)(b) & (c) do not allow an award of TTD benefits if an employee is engaged in any employment or self-employment, and places the burden on the claimant to prove by clear and convincing evidence the inability to engage in any kind of employment of any nature.

The WCJ's oral reasons and judgment do not contain any ruling on Mr. Wiltz's entitlement to TTD benefits, nor does the record reflect any notice to the WCJ by Mr. Wiltz's counsel of the omission of this issue. The issue of Mr. Wiltz's entitlement to TTD benefits was not considered by the lower court.

5

Therefore, Mr. Wiltz's first assignment of error cannot be considered by this court. *Boudreaux v. State, Dep't of Transp. & Dev.*, 01-1329 (La. 2/26/02), 815 So.2d 7.

### *Assignments of Error Two and Three - Procedural Issues Relating to Mr. Wiltz's Entitlement to SEB*

Mr. Wiltz's second and third assignments of error address the issue of Mr. Wiltz's termination for cause from his position as manager of the Pinhook Road location of Todd's. A Todd's employee working under Mr. Wiltz's supervision drove a customer's vehicle without a driver's license and wrecked the vehicle. Todd's company policy clearly states: "**Only licensed drivers are allowed to move customer vehicles**."

As previously indicated, counsel for both parties stipulated, and the WCJ agreed, that the issue of Mr. Wiltz's termination for cause, and its effect on his claim for post termination supplemental earning benefits, would be heard by the WCJ at the close of Todd's case in chief.

Mr. Wiltz asserts in his second assignment of error that the WCJ erred in requiring him to present his evidence first on the issue of termination for cause. We find that the order of trial was within the WCJ's discretion. The burden to prove entitlement to SEB remained with Mr. Wiltz, and his termination for cause was an integral part of that determination.

In *Grillette v. Allied Compressors*, 05-982 (La.App 3 Cir. 2/1/06), 923 So.2d 774, the claimant contended that regardless of the reason for her termination, she was restricted to light duty work for the period in question and, therefore, was entitled to SEB. Her employer contended that because of her "for cause" termination, she was not entitled to SEB. The court stated, "[a]n employee bears the burden of proving, by a preponderance of the evidence that the injury resulted

6

in his or her inability to earn ninety percent (90%) or more of the average pre-injury wage under the facts and circumstances of the individual case." *Grillette*, 923 So.2d at 778.

The *Grillette* court found that Ms. Grillette stipulated she was terminated for cause for violating company policy and not for any reason related to her light duty work restrictions and, thus, was not entitled to SEB. "The fact that a job is no longer available to Grillette due to her 'for cause termination' is no different from her refusing to accept the job in the first place and, thus, terminates her entitlement to SEB." *Grillette*, 923 So.2d at 779. Additionally, in *Fusilier v. Slick Construction*, 94-11 (La.App. 3 Cir. 6/1/94), 640 So.2d 788, the court held that a worker, who had been released to light duty work and refused his employer's offer of light duty work at the same wage and hours, was not entitled to SEB.

The burden of proof as to his entitlement to SEB remained with Mr. Wiltz. The WCJ correctly required Mr. Wiltz to present his case on the issue of termination for cause. Thus, Mr. Wiltz's second assignment of error is without merit.

Mr. Wiltz then urges in his third assignment of error that, "[t]he workers' compensation judge legally erred in even deciding the issue of cause." Counsel for Mr. Wiltz, despite the stipulation of counsel and the agreement of the WCJ to have the issue of termination for cause tried before the WCJ, now argues that *Miller v. Christus St. Patrick Hospital*, 12-370 (La.App. 3 Cir. 10/24/12), 100 So.3d 404, *writ denied*, 12-2467 (La. 1/11/13), 107 So.3d 619, holds that the issue of termination for cause must be tried to a state district court. Based on the particular facts and circumstances of this case, we do not agree. In *Cash Point Plantation*

7

*Equestrian Center, Inc. v. Shelton*, 40-647, p. 5 (La.App. 2 Cir. 1/25/06), 920 So.2d 974, 977 (citations omitted), the court stated:

> A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. A stipulation between the parties in a specific case is binding on the court when not in derogation of the law; it is the law of the case. A judicial confession may be revoked only on the ground of error of law.

Counsel for Mr. Wiltz and Todd's stipulated that the WCJ would make the determination of whether Mr. Wiltz was terminated for cause by violating Todd's company policy. The agreement of the parties allowing the WCJ to hear and determine the issue of Mr. Wiltz's termination for cause is a logical continuation of the WCJ's previous ruling on Mr. Wiltz's right to SEB prior to his termination. Moreover, the determination of whether Mr. Wiltz was terminated for cause is a crucial and necessary step in order for the WCJ to determine whether Mr. Wiltz was entitled to SEB post termination. It is well settled that termination for cause deprives a claimant of the right to claim SEB. *Grillette*, 923 So.2d 774; *Palmer v. Alliance Compressors*, 05-478 (La.App. 3 Cir. 11/2/05), 917 So.2d 510, *writ denied*, 05-2440 (La. 3/24/06), 925 So.2d 1231. Thus, we find the stipulation is binding on the parties and will not be disturbed on appeal. Mr. Wiltz's third assignment of error is without merit.

### Pre-Termination Entitlement to SEB

At the hearing before the WCJ, Mr. Wiltz claimed that he was entitled to pre-termination SEB, as his salary post-accident was less than the stipulated $1,000.00 per week that he was earning prior to the January 15, 2009 accident.

"Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556.

8

A claimant is entitled to SEB, under La.R.S. 23:1221(3)(a)(i), "[f]or injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury[.]" In *Banks*, 696 So.2d at 566 (citation omitted), the supreme court stated:

> Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. . . .
>
> Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs. . . must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job. . . .

However, if the employee's inability to earn ninety percent of his pre-injury wages is due to "circumstances" other than the work-related injury, he is not entitled to SEB. *Coleman v. Walter Indus., Inc./Jim Walter Homes*, 10-1145, p. 9 (La.App. 1 Cir. 2/11/11), 56 So.3d 1258, 1262. The WCJ found based on the law and the totality of the evidence, citing La.R.S. 23:1221(3) and *Piossenot v. St. Bernard Parish Sheriff's Office*, 09-2793, (La. 1/9/11), 56 So.3d 170, that Mr. Wiltz failed to carry his burden of proof that he was entitled to any payment of SEB from Todd's.

The testimony at trial clearly supported the WCJ's finding that Mr. Wiltz's pre-injury job as manager of three of Todd's locations was within the classification of light duty. The WCJ also found that Mr. Wiltz's post injury and pre-termination job as manager of the Pinhook location was also within the light duty classification. The light duty classification was confirmed by the job analysis performed by the vocational rehabilitation counselor and Mr. Wiltz's own treating physician. Thus, after March 24, 2009, Mr. Wiltz's release to light duty was, in fact, a release to full duty work at Todd's.

Mr. Wiltz claimed he could not fulfill all of his previous job responsibilities, as his job as a manager required him to lift heavy fifty-five gallon drums on a regular basis. Mr. Wiltz was restricted from lifting more than fifty pounds, and the drums were around four hundred pounds. Employees would lift the drums, place the drums on dollies, and use dollies to move the drums when needed. The WCJ found that Mr. Wiltz's position as manager did not require him to engage in lifting, tilting, or moving the fifty-five gallon drums, as there were other employees he could instruct to place the heavy drums on the dolly and move drums as needed. Additionally, the WCJ questioned Mr. Wiltz's "veracity, in particular, his testimony regarding the lifting of the fifty-five gallon drums." Other managers at Todd's, including the new manager of the Pinhook location, testified that they were not required to participate in moving the drums and would direct other employees to do so. The WCJ concluded that Mr. Wiltz's testimony lacked credibility on this issue.

The record also clearly supports the WCJ's finding that Mr. Wiltz failed to meet his burden of proof that because of the change in his pay status, from $1,000.00 per week to $18.00 per hour, he was no longer earning ninety percent of his pre-injury wage post-accident and pre-termination. Prior to his injury, Mr. Wiltz was paid a weekly salary of $1,000.00 based on his job of managing three of Todd's locations. Mr. Wiltz claimed that his job responsibilities and pay changed after his injury. Shortly after his injury and prior to the surgery on his left eye, however, Mr. Wiltz requested that he be allowed to manage only one location of Todd's due to the stress involved in managing multiple locations. Mr. Wiltz's request was granted by his employer, Todd Lemaire. Mr. Lemaire further testified

10

that several different employees had tried to manage multiple locations of Todd's and had been unsuccessful.

According to Mr. Lemaire, the change in Mr. Wiltz's position was also occasioned by the financial condition of Todd's, which could no longer afford Mr. Wiltz's former managerial position due to a reduction in the number of employees. Todd's had filed for Chapter Eleven reorganization under the bankruptcy law. At Mr. Wiltz's request, his position was changed to manager of only the Pinhook location of Todd's with a pay rate of eighteen dollars per hour.

The Pinhook location of Todd's is open six days a week from seven forty-five a.m. to five p.m. The WCJ found that based on Mr. Wiltz's testimony, he "consistently worked less than forty hours a week." He chose to begin his work day "between eight-fifteen and eight-forty-five a.m., depending on the traffic and leaves by three-fifteen to pick up his daughter." Thus, the WCJ found factually that Mr. Wiltz made a personal decision to work fewer hours, coming into work late and leaving early to help care for his daughter. The WCJ also found that Mr. Wiltz continued to wash cars on the side, thereby further supplementing his income.

The WCJ found and the record supports that Mr. Wiltz could have worked forty-eight hours a week, which would have resulted in a gross wage of $936.00, a figure in excess of ninety percent of his stipulated average weekly wage of $1,000.00.[2]

The evidence in the record clearly supports the WCJ's finding that when Mr. Wiltz returned to work in March 2009, until his termination in November 2011, his reduced hours had nothing to do with his inability to perform any of his duties.

_____

[2] Although, Dr. Moore restricted Mr. Wiltz to forty hours a week due to unstable hypertension, as will be discussed, his hypertension is not causally related to the work-related accident.

The circumstances of his reduced pay were a personal choice by Mr. Wiltz to work reduced hours, which Todd's allowed, and was unrelated to his work-related injury. The WCJ found that this choice by Mr. Wiltz to work reduced hours was the cause of his inability to earn ninety percent of his pre-injury wages. We affirm the WCJ's denial of any SEB to Mr. Wiltz from March 24, 2009, to his termination on November 15, 2011. *Coleman*, 56 So.3d at 1262.

### *Post-Termination Entitlement to SEB*

In *Palmer v. Schooner Petroleum Services*, 02-397 (La.App. 3 Cir. 12/27/02), 834 So.2d 642, *writ denied*, 03-367 (La. 4/21/03), 841 So.2d 802, a panel of this court held that termination in and of itself, or without cause, does not destroy a claimant's entitlement to SEB. However, when an employee is terminated due to the claimant's actions or a violation of company policy, i.e., for cause, he is no longer entitled to SEB. *Grillette*, 923 So.2d 774; *Palmer v. Alliance Compressors*, 917 So.2d 510.

The WCJ found that Mr. Wiltz was terminated for cause for violating Todd's company policy by allowing an employee under his supervision to drive a customer's vehicle without a driver's license, causing a wreck and damage to the customer's vehicle. The WCJ also found that Mr. Wiltz was aware of the company policy pertaining to unlicensed drivers and the manager's responsibility for any accident involving an unlicensed driver. Two prior incidents involving unlicensed drivers occurred while Mr. Wiltz was a manager. In only one of the prior incidents was he present on the site. Evidence in the record indicates that he was warned on both prior occasions.

Mr. Wiltz testified that the policy was not in effect after the first accident, but admitted that after the second accident, he was given a warning. The WCJ's

finding that Mr. Wiltz was terminated for cause and, therefore, not entitled to SEB is fully supported by the record and case law. We affirm the WCJ's ruling that Mr. Wiltz is not entitled to post-termination SEB dating from November 15, 2011, as he was terminated for cause for violating a known company policy.

*Analysis of the Fourth Assignment of Error – Right Eye Condition*

In his fourth assignment of error, Mr. Wiltz argues the WCJ erred in finding that Mr. Wiltz failed to meet his burden of proof that his right eye condition was causally related to his work injury to his left eye.

Mr. Wiltz suffered a work injury to his left eye. He was later diagnosed with glaucoma in his right eye for which he received medical treatment and surgery paid for by Todd's.

The WCJ reviewed the deposition of Dr. Hall, Mr. Wiltz's treating physician for his right eye. The WCJ recited verbatim Dr. Hall's deposition testimony taken October 28, 2010, in his reasons for ruling confirming that Dr. Hall was unable to "state with any degree of medical certainty" that Mr. Wiltz's glaucoma was related to the work accident. Dr. Hall was asked, "what kind of things can cause pressure change in the eye?" He responded, "[u]sually, it's idiopathic. We don't know."

Mr. Wiltz had the burden to prove by a preponderance of the evidence that the medical condition in his right eye is related to his work related accident involving his left eye. To establish that a claimant is entitled to workers' compensation benefits, claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment, the accident caused his injuries, and the injury caused his disability. *Ceasar v. Crispy Cajun Rest.*, 94-30 (La.App. 3 Cir. 10/5/94), 643 So.2d 471, *writ denied*, 94-2736 (La. 1/6/95), 648 So.2d 931. "The employee has the burden of proving, by a

13

preponderance of the evidence, that the resulting disability is related to an on-the-job injury." *Buxton v. Iowa Police Dep't*, 09-520, p. 12 (La. 10/20/09), 23 So.3d 275, 283.

Based on the evidence, we find no manifest error and affirm the WCJ's finding that Mr. Wiltz failed to carry his burden of proof that his right eye condition was causally related to the work-related injury to his left eye. We also affirm the WCJ's award of a credit to Todd's, pursuant to La.R.S. 23:1206, for all costs of medical treatment to Mr. Wiltz's right eye. Thus, Mr. Wiltz's fourth assignment of error is without merit.

### *Analysis of the Fifth Assignment of Error - Hypertension*

In the fifth assignment of error Mr. Wiltz argues the WCJ erred in finding that he failed to meet his burden of proof that his claim for high blood pressure and/or hypertension was related to the work related injury to his eye and his stress on the job.

The WCJ's reasons reflect that in support of this claim, Mr. Wiltz submitted a November 30, 2010 letter sent by his counsel, Ms. Manecke, to his treating physician for this condition, Dr. Moore. The letter stated in pertinent part:

> It is my understanding that you recently restricted Mr. Wiltz from working more than forty hours a week due to unstable hypertension. Assuming prior to Mr. Wiltz's job injury, he did not suffer with high blood pressure or require any treatment for his high blood pressure, please advise whether you believe that it is more likely than not that his hypertension is related to stress from his job and injury. And, it is checked yes.

The WCJ then conducted a review of Mr. Wiltz's medical records, including both records from Lafayette General Medical Center dated October 29, 1999, and a June 17, 2009 report from Dr. Moore under the portion entitled "History of Present Illness." From these medical records, the WCJ determined that Mr. Wiltz had

14

previously been diagnosed with and treated for "elevated high blood pressure" in October 1999. The WCJ also quoted directly from additional progress notes from Lafayette General, which reflected that on January 19, 2009, under the heading "History," it stated, "[h]e has been told that his blood pressure is high. He has an appointment in two days to see his family doctor about being put on medicine for his high blood pressure."

The notes of Dr. Moore on June 17, 2009, also confirm that Mr. Wiltz's high blood pressure/hypertension is not related to his work related injury and job stress. Once again the WCJ quotes, "The hypertension is associated with family history. The patient's cardiovascular risk factors include obesity, BMI greater than 30kg/m2, physical inactivity. The patient's identifiable causes of hypertension include none."

The WCJ then further addressed the letter of Ms. Manecke to Dr. Moore on November 30, 2010, and stated, "The letter to Dr. Moore by Ms. Manecke asked Dr. Moore to assume prior to Mr. Wiltz's job injury, he did not suffer with high blood pressure. This question is flawed and inaccurate based upon, at minimal, the October 29, 1999, Lafayette General Medical Center ER Physician's Assessment."

Based on the WCJ's reasons, the medical reports in evidence, and the claimant's burden of proof, we agree that Mr. Wiltz failed to meet his burden of proof that his high blood pressure/hypertension was causally related to his on the job accident. Thus, this assignment of error is without merit.

### Analysis of the Sixth and Seventh Assignments of Error – Attorney fees and Costs

In the sixth and seventh assignments of error, Mr. Wiltz argues that the WCJ erred in awarding only $8,000.00 in attorney fees and awarding only fifty percent

of Mr. Wiltz's expenses, as Mr. Wiltz obtained the maximum penalties of $8,000.00 under La.R.S. 23:1201(F).

The WCJ considered "the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant and the amount of time devoted to the case." He concluded that $8,000.00 was an appropriate amount based on the facts of the case and the results obtained. Mr. Wiltz failed to prevail on any of the issues actually litigated, as Todd's stipulated to paying the maximum $8,000.00 penalty pre-trial.

Mr. Miller's affidavit reflects that he spent fifty-seven hours on Mr. Wiltz's case prior to trial. He also seeks attorney fees for six hours post-trial for a total of sixty-three hours at the hourly rate of $225.00. Ms. Manecke's affidavit reflects that she spent sixty-eight hours on Mr. Wiltz's case prior to trial and another eight hours in preparation of the post-trial memorandum for a total of seventy-six hours at an hourly rate of $175.00. Together counsel for Mr. Wiltz sought a total of $27,475.00 in attorney fees for the case.

Our supreme court, in *McCarroll v. Airport Shuttle, Inc.*, 00-1123, p. 9 (La. 11/28/00), 773 So.2d 694, 700 (citations omitted), stated:

> In our determination of the respective rights of the employee and the attorney to the statutory attorney fees, a persuasive factor is the methodology used to calculate the amount of the statutory attorney fees. The only limitation on the amount is the reasonableness of the fee awarded by the judge. The amount awarded rests within the discretion of the workers' compensation judge, as long as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case.

"Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and

16

undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La. 6/29/99), 737 So.2d 41, 46 (citation omitted). An appellate court reviews the WCJ's decision to award penalties and attorney fees using the manifest error standard of review. *Ducote v. La. Indus., Inc.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843.

Given our supreme court's directive in *McCarroll*, we find no manifest error in the WCJ's award of $8,000.00 in statutory attorney fees. As previously indicated, Mr. Wiltz did not prevail on any of his claims at trial and was awarded $8,000.00 in statutory penalties based on a stipulation of the parties at the beginning of trial. The parties also stipulated that the injury to Mr. Wiltz's left eye was work related and that his average weekly wage was $1,000.00.

As additional support for the WCJ's holding on this issue, Todd's urges on appeal that testimony at trial questioned the basis of an affidavit submitted by of one of the attorneys for Mr. Wiltz. Counsel for Todd's sought to strike the affidavit as not based on counsel's personal knowledge, but on a review by counsel's secretary. In addition, Mr. Wiltz's counsel was unable to state whether there were duplicate time estimates for work performed by co-counsel.

The WCJ is allowed great discretion in the decision to award attorney fees. *Frank v. City of Lake Charles*, 04-820 (La.App. 3 Cir. 11/10/04), 887 So.2d 679. The supreme court in *McCarroll*, however, does require that the attorney fee awarded be reasonable. Other panels in this circuit have affirmed awards where $8,000.00 in statutory penalties were awarded, and counsel was awarded amounts ranging from $5,000.00 to $10,000.00 in attorney fees. *Mitchell v. Artcrete, Inc.*,

17

09-492 (La.App. 3 Cir. 12/9/09), 24 So.3d 1000; *Burnette v. Village of Esterwood*, 09-680 (La.App. 3 Cir. 12/9/09), 25 So.3d 997.

The WCJ's reasons clearly considered the directive given by the supreme court in *McCarroll* in its determination that the award of $8,000.00 in attorney fees was reasonable in this case. We agree and affirm the judgment of the WCJ.

*Assessment of Costs*

Mr. Wiltz contends the WCJ erred in only assessing fifty percent of the claimant's costs to Todd's in the amount of $996.49 and seeks the full amount of costs of $1,992.98. The decision of the WCJ in awarding costs is governed pursuant to Section 6609 of the Workers' Compensation Hearing Rules and directs that the awarding of costs shall also be governed by La.Code Civ.P. art. 1920. Louisiana Code of Civil Procedure Article 1920 allows a trial court to "render judgment for costs, or any part thereof, against any party, as it may consider equitable." Thus, the determination of the award of costs is within the sole discretion of the trial court and must not be disturbed on appeal unless there is an abuse of that discretion. *Middlebrooks v. Int'l Indem.*, 95-1364 (La.App. 3 Cir. 3/6/96), 670 So.2d 740. We find no abuse of discretion by the WCJ in ruling that each party was to bear fifty percent of the costs.

## DISPOSITION

For the foregoing reasons, we affirm the judgment in all respects. The costs of this appeal are assessed to John Wiltz.

**AFFIRMED**.

18